# 17-1018

## In the
## United States Court of Appeals
## For the Second Circuit



THE WAVE STUDIO, LLC,

*Plaintiff-Counter Defendant-Appellant*,

v.

GENERAL HOTEL MANAGEMENT LTD.,

*Defendant-Cross Defendant-Appellee*,

- and -

DELTA AIR LINES, INC., DBA DELTA.COM,

*Defendant-Cross Claimant-Counter Claimant*,

*(See inside cover for continuation of caption)*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## BRIEF AND SPECIAL APPENDIX FOR
## PLAINTIFF-APPELLANT

COBALT LLP
*Attorneys for Plaintiff-Appellant*
918 Parker Street, Suite A21
Berkeley, California 94710
(510) 841-9800

_____

TRAVELOCITY.COM, LP, DBA TRAVELOCITY.COM, ROOM77, DBA
ROOM77.COM, LEXYL TRAVEL TECHNOLOGIES, DBA
HOTELPLANNER.COM,HOTELSBYME.COM, DBA HOTELSBYME.COM,
FAREBUZZ, DBA FAREBUZZ.COM, WK TRAVEL INC., DBA
TRAVELSPOT.US, DBA ONETRAVEL.COM,NEXTAG, INC., DBA
NEXTAG.COM, AMERICAN AIRLINES, INC., DBA AAVACATIONS.COM,
KAYAK SOFTWARE CORPORATION, DBA KAYAK.COM,VACATIONS BY
TZELL, DBA VACATIONSBYTZELL.COM, BOOKIT.COM INC., DBA
BOOKIT.COM, ANDREW HARPER, DBA ANDREWHARPER.COM, QANTAS
AIRWAYS LIMITED, DBA QANTAS.COM.AU, LUXE TRAVEL, LLC, DBA
LUXETRAVEL.COM, SIGNATURE TRAVEL NETWORK, DBA
SIGNATURETRAVELNETWORK.COM, UNITED AIRLINES, INC., DBA
HOTELS.UNITED.COM, TABLET INC, DBA TABLETHOTELS.COM, FROSH
INTERNATIONAL TRAVEL, INC., DBA FROSHVACATIONS.COM,
EXPEDIA, INC., DBA EXPEDIA.COM, RANDOM HOUSE INC., DBA
FODORS.COM, NETADVANTAGE.COM, DBA IHSADVANTAGE.COM,
MARKET ES INC., DBA HOTELS-AND-DISCOUNTS.COM, PEGASUS
SOLUTIONS INC., ORBITZ WORLDWIDE, LLC, DBA ORBITZ.COM, SPA
FINDER, INC., DBA SPAFINDER.COM, THIS EXIT LLC, DBA
ROADSIDEAMERICA.COM, CEDORA, INC., DBA
REALADVENTURES.COM, THE LEADING HOTELS OF THE WORLD, DBA
LHW.COM, HOTELS.COM GP, LLC, DBA HOTELS.COM, DBA
TRAVELNOW.COM, INC., RESEVERATION COUNTER, DBA
RESERVATIONCOUNTER.COM, IBT MEDIA INC., DBA IBTIMES.COM,
ESSLINGER WOOTEN MAXWELL, INC., DBA NELSONGONZALEZ.COM,
HOTELGUIDES.COM, INC., DBA HOTELGUIDES.COM, ESTEBAN
OLIVEREZ, DBA INSANELYCHEAPFLIGHTS.COM, GETAROOM.COM, DBA
GETAROOM.COM, FROMMER MEDIA, DBA FROMMERS.COM, HIPMUNK,
INC., DBA HIPMUNK.COM, METRO TRAVEL GUIDE, DBA
METROTRAVELGUIDE.COM, JOE MAZZARELLA, DBA ROOMRATE.COM,
QATAR AIRWAYS, DBA QATARAIRWAYS.COM, TRIPADVISOR LLC, DBA
TRIPADVISOR.COM, SETAI OWNERS LLC, DBA SETAI.COM,
HOTELSTRAVEL.COM, DBA HOTELSTRAVEL.COM, LONELY PLANET
GLOBAL, INC., DBA LONELYPLANET.COM, GOGOBOT, INC., DBA
GOGOBOT.COM, FAREPORTAL INC, DBA CHEAPOAIR.COM, LUXURY
TRAVEL MEDIA, DBA LUXURYTRAVELMAGAZINE.COM, DOES, 1-100,
JETBLUE AIRWAYS CORPORATION, DBA JETBLUE.COM,
BUDGETWORKS, INC., DBA SETAICONDORENTALS.COM, LUXEMONT,
DBA JUSTLUXE.COM, ALLIANCE RESERVATIONS NETWORK, DBA
RESERVETRAVEL.COM, MOBISSIMO INC., DBA MOBISSIMO.COM, VFM
LEONARDO, INC., MYSOBE.COM, DBA MYSOBE.COM, ESCALA
VACATIONS, DBA ESCALAVACATIONS.COM, QUESTEX MEDIA LLC,
DBA FIVESTARALLIANCE.COM, ABOUT, INC., DBA ABOUT.COM,

*Defendants-Cross Defendants*,

*(See inside cover for continuation of caption)*

ANA CRISTINA MARUN, DBA VIPLUXURYRENTALS.COM, I4SITES, DBA
I4SANUR.COM, JET SET OMNIMEDIA, DBA JETSETREPORT.COM, KEVIN
TOMLINSON, DBA KEVINTOMLINSON.COM, KRISTINE HALL, DBA
LUXURYRENTALSMIAMIBEACH.COM, LINDA GUSTAFSON, DBA
LINDAGPROPERTIES.COM, LORRAINE TRAVEL, DBA
WHATAHOTEL.COM, REEF & RAINFOREST DIVE & ADVENTURE
TRAVEL, DBA REEFRAINFOREST.COM, DBA SETAI-REALTY.COM,
TRACK ENTERTAINMENT, DBA CLUBPLANET.COM, VACATIONIDEA
INC., DBA VACATIONIDEA.COM, DISNEY ENTERPRISES, INC., DBA
GO.COM, GANNETT SATELLITE INFORMATION NETWORK, INC., DBA
TRAVEL.USATODAY.COM, TIME INC., LIFESTYLE GROUP, DBA
COASTALLIVING.COM, SAMIR PATEL, DBA MIAMICONDOREALTY, DBA
SETAISOUTHBEACH.COM, DBA SOUTHBEACHBROKERS.COM, DANIEL
HORNEK, DBA MIAMICONDOSEARCH.COM, DBA KAFKA- FRANZ.COM,
AUSTIN AMERICAN STATESMAN, DBA STATESMAN.COM, SUNNY
REALTY, DBA SUNNYISLESMIAMIREALESTATE.COM, ZIMBIO, INC.,
DBA ZIMBIO.COM, CHARLES KESSLER, DBA A1-DISCOUNT-
HOTELS.COM, HELEN SIEW, DBA HOTELSPEEDY.COM, CHICTIP.COM,
LLC, DBA CHICTIP.COM, TURNER BROADCASTING SYSTEM, INC., DBA
CNNGO.COM, DANIEL CHESTNUT, DBA ECONOMYBOOKING.COM,
TWENTIETH CENTURY FOX FILM CORPORATION, DBA FOX NEWS
NETWORK, LLC, DBA FOXNEWS.COM, HAUTE LIVING, DBA
HAUTELIVING.COM, THEHUFFINGTONPOST.COM, INC., DBA
HUFFINGTONPOST.COM, LESUEUR INTERIORS, DBA
LESUEURINTERIORSBLOG.COM, MIAMI NEW TIMES, LLC, DBA
MIAMINEWTIMES.COM, THE NILE PROJECT, INC., DBA NILEGUIDE.COM,
REFINERY29, DBA REFINERY29.COM, VISA INC., BRITISH AIRWAYS PLC,
HOTELS COMBINED LLC, SWISS INTERNATIONAL AIR LINES LTD.,
TRAVIX TRAVEL USA INC., VISITUSA LLC,

*Defendants.*

———————————————

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..................................................................iv

I.    PRELIMINARY STATEMENT ...................................................1

II.   JURISDICTIONAL STATEMENT ...............................................1

III.  CORPORATE DISCLOSURE STATEMENT .................................2

IV.  STATEMENT OF ISSUES PRESENTED FOR REVIEW ............2

V.   STATEMENT OF THE CASE ......................................................5

     A. Nature of the Case......................................................................5

     B. Course of Proceedings ................................................................6

     C. The Decision Below...................................................................7

VI.  STATEMENT OF FACTS.............................................................8

     *Appellant The Wave Studio, LLC*................................................8

     *Ms. Lee's history with Appellee GHM* .......................................8

     *The Relevant Contractual Documents* ......................................10

     *GHM's and the other Defendants' infringement of Appellant's copyrights*...................................................................................12

     *The formation of Appellant and assignment of rights to it* ........13

VII. SUMMARY OF ARGUMENT ...................................................13

VIII. STANDARD OF REVIEW ........................................................16

IX.  ARGUMENT ........................................................................17

  A. The *Forum Non Conveniens* Test .........................................17

  B. The District Court Abused Its Discretion by Failing to Fully
     Consider Each of the *Forum Non Conveniens* Factors and
     Unreasonably Balancing Those Factors ...............................18

    1. The District Court did not afford Appellant's choice of
       forum the high deference required by law .....................19

      a) This is a local dispute..............................................21

      b) The District Court improperly withheld deference to
         Appellant's chosen forum on the untrue assertion that
         Appellant Wave is foreign, in contradiction of this
         Circuit's jurisprudence..........................................22

      c) The cases cited by the District Court (and GHM) that
         hold foreign plaintiff's are entitled to less deference
         do not apply........................................................23

      d) Appellant's chosen venue was appropriate and does not
         represent forum shopping ....................................26

    2. Singapore is not an adequate forum.............................28

      a) The District Court abused its discretion by improperly
         severing Appellant's claims against GHM in order to
         grant summary judgment on forum non conveniens
         grounds because such grounds are only appropriate
         when the alternative forum is available for all defendants .......29

      b) The District Court failed to fully consider the adequacy
         of the alternative forum by not addressing whether a
         Singapore Court can or would actually adjudicate
         Appellant's claims of infringement of U.S. copyright
         law against Appellee ..............................................35

c) The District Court further abused its discretion in
determining Singapore is an adequate alternative
forum because doing so would likely give GHM a
statute of limitations defense that GHM would not
have otherwise had.................................................................40

d) If the District Court's dismissal is nonetheless affirmed,
this Court should modify it to avoid prejudice to Appellant ....42

3. GHM failed to meet its burden regarding the private factors,
and the District Court improperly weighed them .........................45

4. GHM failed to meet its burden regarding the public factors,
and the District Court improperly weighed them .........................50

X. CONCLUSION ................................................................53

## <u>TABLE OF AUTHORITIES</u>

Page

### <u>Cases:</u>

*Advanced Processor Techs. LLC v. Atmel Corp.,*
No. 2:12-CV-152-JRG-RSP,
2013 WL 1279053 (E.D. Tex. Mar. 26, 2013) ...............................................20

*Aerotel, Ltd. v. Sprint Corp.,*
100 F. Supp. 2d 189 (S.D.N.Y. 2000)...............................................................49

*Anwar v. Fairfield Greenwich Ltd.,*
742 F. Supp. 2d 367 (S.D.N.Y. 2010)...............................................................37

*Bank of Credit and Commerce Int'l (OVERSEAS) Ltd. v. State Bank of Pak.,*
273 F.3d 241 (2d. Cir. 2001)......................................................................43, 45

*Broad. Rights Intern. Corp. v. Societe du Tour de France, S.A.R.L.,*
675 F. Supp. 1439 (S.D.N.Y. 1987)..................................................................25

*Calavo Growers of Cal. v. Generali Belg.,*
632 F.2d 963 (2d Cir. 1980).....................................................................43, 45

*Carey v. Bayerische Hypo-Und Vereinsbank AG,*
370 F.3d 234 (2d Cir. 2004).....................................................................17, 50

*Children's Television Workshop and Muppets v. Mary Maxim, Inc.,*
No. 83 Civ. 2448 (RWS), 1984 WL 1349 (S.D.N.Y. March 9, 1984) .............26

*Coker v. Bank of Am.,*
984 F. Supp. 757 (S.D.N.Y. 1997).....................................................................49

*Creative Tech., Ltd. v. Aztech Sys. Pte., Ltd.,*
61 F.3d 696 (9th Cir. 1995)...............................................................37, 38, 39

*Deskovic v. City of Peekskill,*
673 F. Supp. 2d 154 (S.D.N.Y. 2009)...............................................................29

*DiRenzio v. Philip Servs. Corp.,*
294 F.3d 21 (2d Cir. 2002)..................................................................16, 18, 47

iv

*Erausquin v. Notz, Stucki Mgmt. (Bermuda) Ltd.*,
  806 F. Supp. 2d 712 (S.D.N.Y. 2011)..........................................18, 50

*Guerrini v. Atmel Corp.*,
  667 Fed. App'x 308 (2d Cir. 2016)....................................................17

*Gulf Oil Corp. v. Gilbert*,
  330 U.S. 501 (1947)..........................................................................45

*In re Barnes & Noble, Inc.*,
  743 F.3d 1381 (Fed. Cir. 2014).........................................................20

*In re Hellas Telecomms. (Luxembourg) II SCA*,
  535 B.R. 543 (S.D.N.Y. 2015)....................................................28, 35

*In re Optimal U.S. Litig.*,
  837 F. Supp. 2d 244 (S.D.N.Y. 2011)................................................19

*Iragorri v. United Techs. Corp.*,
  274 F.3d 65 (2d Cir. 2001)...................................................17, 19, 23

*Itar-Tass Russian News Agency v. Russian Kuriar, Inc.*,
  153 F.3d 82 (2d Cir. 1998)....................................................36, 51, 52

*Jewell v. Magic Lifeboat*,
  No. 16-cv-1587 (NG) (PK),
  2017 WL 2226572 (E.D.N.Y. May 19, 2017) ...........................26, 30

*Jorgensen v. Epic/Sony Records*,
  351 F.3d 46 (2d Cir. 2003)................................................................35

*Kregos v. Assoc. Press*,
  3 F.3d 656 (2d Cir. 1993)..................................................................40

*Manela v. Garantia Banking Ltd.*,
  940 F. Supp. 584 (S.D.N.Y. 1996)....................................................46

*Manu Int'l, S.A. v. Avon Prods., Inc.*,
  641 F.2d 62 (2d Cir. 1981)..............................................46, 47, 49, 52

*Masa LLC v. Apple Inc.,*
  No. 4:15-CV-00889-AGF, 2016 WL 629263
  (E.D. Mo. Feb. 17, 2016) ...................................................................20

*Micro Design LLC v. Asus Comput. Int'l,*
  No. CV 14-837-LPS-CJB, 2015 WL 2089770 (D. Del. May 1, 2015) ............20

*Norex Petroleum Ltd. v. Access Indus., Inc.,*
  416 F.3d 146 (2d Cir. 2005)..........................................17, 22, 28, 35

*Olympic Corp. v. Societe Generale,*
  462 F.2d 376 (2d Cir. 1972)...............................................................52

*Piper Aircraft Co. v. Reyno,*
  454 U.S. 235, 102 S. Ct. 252 (1981)..................................................39

*Pollux Holding Ltd. v. Chase Manhattan Bank,*
  329 F.3d 64 (2d. Cir. 2003)................................................................35

*PT United Can Co. v. Crown Cork & Seal Co.,*
  138 F.3d 65 (2d Cir. 1998)..................................................................29

*Repp v. Webber,*
  914 F. Supp. 80 (S.D.N.Y. 1996)........................................................40

*RI Group LLC v. Trefonisco Mgmt. Ltd.,*
  949 F. Supp. 2d 546 (S.D.N.Y. 2013)...........................................24, 25

*Tomjai Enters. Corp. v. Laboratorie Pharmaplus USA Inc.,*
  No. 12 Civ. 3729(RWS), 2012 WL 3104891
  (S.D.N.Y. July 31, 2012)........................................................31, 33, 34

*Usha (India) Ltd. v. Honeywell Int'l, Inc.,*
  421 F.3d 129 (2d Cir. 2005)............................................42, 43, 44, 45

*Van Schijndel v. Boeing Co.,*
  263 F. App'x 555 (9th Cir. 2008) .......................................................37

*Van Schijndel v. Boeing Co.,*
    434 F. Supp. 2d 766 (C.D. Cal. 2006) ............................................................37

*Wiwa v. Royal Dutch Petroleum Co.,*
    226 F.3d 88 (2d Cir. 2000).........................................................22, 23, 24, 34

*Wyndham Assocs. v. Bintliff,*
    398 F.2d 614 (2d Cir. 1968)...............................................................29, 31, 32

*Zervos v. Verizon N.Y., Inc.,*
    252 F.3d 163 (2d Cir. 2001)...........................................................................16

## **Rules, Laws and Statutes:**

17 U.S.C. § 507(b) ...........................................................................................40

28 U.S.C. § 1291 ................................................................................................1

28 U.S.C. § 1331 ................................................................................................1

28 U.S.C. § 1338................................................................................................1

28 U.S.C. § 1391(b) ....................................................................................26, 27

28 U.S.C. § 1400(a) .........................................................................................26

28 U.S.C. § 1404(a) .........................................................................................31

28 U.S.C. § 2201 ................................................................................................1

Federal Rule of Appellate Procedure 26.1 .......................................................2

Federal Rule of Civil Procedure 19 .................................................................7

Federal Rule of Civil Procedure 21 ...............................................................31

## I.     PRELIMINARY STATEMENT

Plaintiff-Appellant The Wave Studio, LLC ("Appellant" or "Wave") appeals from a final order (A-2389) by the United States District Court for the Southern District of New York (Seibel, J.) granting summary judgment in favor of Defendant-Appellee General Hotel Management, Ltd. ("GHM" or "Appellee") by first severing Appellant's claims against Appellee from its claims against the other 70+ defendants (A-2388) and then dismissing all claims against GHM only on *forum non conveniens* grounds (A-2389).

## II.    JURISDICTIONAL STATEMENT

The District Court below had subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1338, and 2201.  This Court has jurisdiction over this appeal under 28 U.S.C. § 1291.  The District Court entered its final decision as to Appellee GHM, issuing an order granting summary judgment in favor of GHM on March 10, 2017.  (A-2368 to A-2389).  Appellant filed a timely notice of appeal on April 7, 2017.  (A-2390).

## III. CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, Plaintiff-Appellant The Wave Studio, LLC states that it is not publicly held, nor does any publicly held corporation have any ownership interest in it.

## IV. STATEMENT OF ISSUES PRESENTED FOR REVIEW

A. Whether the District Court erred in dismissing Appellant's claims against Appellee GHM on *forum non conveniens* grounds, when the District Court:

1. Failed to give Appellant's choice of forum the appropriate deference called for by the law;

2. Disregarded the fact that severance of the claims against Appellee in this case is not authorized under the Federal Rules of Civil Procedure and, even if allowed, is not in the interest of judicial economy, as it will prejudice Appellant by requiring it to pursue its U.S. infringement claims in multiple countries and will likely not avoid re-litigation of Appellant's claims against Appellee for U.S.-based copyright infringements in the Southern District of New York, as well as the other defendants' indemnity claims against GHM;

3.    Failed to fully consider whether, without severing GHM from the other defendants, Singapore is an adequate forum because no defendants but GHM would be subject to process there;

4.    Failed to fully analyze whether Singapore is an adequate forum because it did not consider or discuss whether a Singapore court can or would adjudicate claims for copyright infringement taking place in the United States and governed by American copyright law;

5.    Disregarded the prejudicial consequence to Appellant from the District Court's unconditional dismissal that even if a Singapore court were to entertain U.S. copyright infringement claims against GHM, or if Appellant reasserted those claims against GHM at a later date in the United States after successfully establishing copyright ownership under Singapore law in Singapore, those claims would be time-barred as to infringements that ceased three or more years prior to the filing of the new lawsuit (in Singapore or the U.S.), a defense GHM would not have but for the District Court's erroneous unconditional dismissal;

6.     Failed to mitigate any prejudice to Appellant from its dismissal order by not making the dismissal conditional on the Singapore courts' acceptance of the case, acceptance by GHM of Singapore as a forum, and tolling of any U.S. copyright statute of limitations in a Singapore action or a later one filed in the Southern District of New York to adjudicate its claims of U.S. copyright infringement against GHM after establishing ownership rights in Singapore;

7.     Improperly balanced the private interests at issue by ignoring that the parties have engaged in lengthy discovery and active litigation in the court below, demonstrating their ease of access to evidence while litigating in the Southern District of New York; ignoring that Appellee claimed it was entitled to summary judgment on the key copyright ownership issue, making trial of the case unnecessary; failing to consider other alternative procedural methods for obtaining witness testimony from foreign sources; and failing to find Appellee did not meet its burden regarding evidence submitted on the private factors; and

8.     Ignored, in balancing the public interests, that the
Southern District of New York has a local interest in this case
given that the vast majority of other defendants still named in
this case are U.S.-based, and all claims brought in the suit,
including those against Appellee GHM, are for infringement
taking place in the United States and subject to American law;
and erroneously ruling that Appellee had met its burden on the
public factors.


V.     STATEMENT OF THE CASE

A.     Nature of the Case

This is a copyright infringement action over photographs of various
luxury hotel properties to which Appellant Wave claims to own the
copyrights (the "Photographs").  Appellee GHM, a hotel management
company, has claimed that the hotels it managed (the "Hotels") own the
copyrights to the Photographs.  Thus far, copyright ownership and implied
license over the Photographs are the only issues currently being litigated in
this case based on a stay as to all other issues and defendants ordered by the
District Court.

B.       Course of Proceedings

Appellant Wave filed the complaint in this action on December 31,

2013 (A-56 to A-826) and the First Amended Complaint on April 23, 2014

(A-827 to A-866). On July 3, 2014, based on discussions held before the

District Court on July 2, 2014, the District Court stayed the case as to all

defendants but GHM.  (A-887).  The stay also applied to all issues except

the threshold issue in the case, which the District Court has described as

whether GHM had the right to distribute the Photographs "either via an

implied license or because GHM and/or its managed hotels are the rightful

owners of the photographs." (A-2177, lines 7–10).  Numerous defendants

have also made clear their intentions to make indemnity claims against

GHM  (A-1938 to A-1962), which will presumably be raised once the stay is

lifted.

After completing discovery on the threshold issue, the parties filed

cross-motions for summary judgment.  (A-888 to A-890 and A-1326 to A-

1327).  GHM's motion sought summary adjudication that the Hotels were

the owners of the copyrights to the Photographs or that it (and the Hotels)

had an implied license to use and distribute the Photographs freely. (A-888

to A-889 and A-924 to A-927).  GHM also sought dismissal on summary

judgment of the claims against GHM alone based on three procedural

grounds: the doctrine of *forum non conveniens* (in favor of Singapore), lack of personal jurisdiction over GHM, and failure to join indispensable parties under Federal Rule of Civil Procedure 19. (A-889 and A-919 to A-924).

Appellant opposed GHM's motion and filed its own cross-motion for summary judgment seeking summary adjudication that it is the owner of the copyrights to the Photographs. (A-1326 to A-1327). All documents related to the parties' cross-motions were filed on May 6, 2016. (A-51 to A-53).

C.     The Decision Below

On March 10, 2017, the District Court issued its final decision on the parties' cross-motions for summary judgment. (A-2368 to A-2389). The District Court declined to address both the substantive threshold copyright ownership issue as well as GHM's other procedural grounds for summary judgment. (A-2375). Instead, the District Court granted GHM's motion for summary judgment on *forum non conveniens* grounds only, and dismissed all of Appellant's claims against GHM. (A-2389). In order to do so, the District Court had to sever the claims against GHM from the other defendants so that the *forum non conveniens* factors only needed to be applied to GHM instead of all of the defendants, the near entirety of which are American companies not susceptible to service in Singapore. (A-2386 to A-2388). Finally, the District Court retained the stay as to all other

defendants and requested the parties provide status updates every three months.  (A-2389).

VI.    STATEMENT OF FACTS

*Appellant The Wave Studio, LLC*

Appellant, The Wave Studio, LLC, is a limited liability company organized under the laws of the State of New York, with its principal place of business at One Barker Avenue, #542, White Plains, New York 10601. (A-830, ¶ 9).  Appellant is a business entity owned and operated by photographer and creative Lee Kar Yin, also known as "Jr" Lee, a Malaysian citizen domiciled in Singapore. (A-830, ¶ 9).  Ms. Lee creates marketing materials, including photographic works, for businesses worldwide using her original works and retains ownership of all rights, title, and interest in and to the works. (A-830, ¶ 9).  The Wave Studio, LLC was formed to hold, manage, and control the intellectual property rights to these works, including, but not limited to, U.S. copyright registrations. (A-830, ¶ 9).

*Ms. Lee's history with Appellee GHM*

GHM is a hotel management company specializing in high-end luxury properties.  (A-1009, ¶ 4; A-1905 at pp. 47:4–48:19).  GHM has its principal place of business in Singapore.  (A-1009, ¶ 3).  GHM also maintains sales offices worldwide, including in San Francisco, California and in New York,

8

New York, both of which promote GHM and the GHM-managed Hotels to maximize sales in those geographic regions. (A-1009, ¶ 5; A-1906, pp. 84:5–85:22; A-1909, pp. 94:5–95:14; A-1910, pp. 98:25–101:14).

From approximately 1995 through 2007, GHM asked Ms. Lee to create various marketing collaterals (e.g., brochures, flyers, banners, etc.) for various Hotels under GHM's management. (A-1421, ¶ 7; A-1425, ¶ 21; A-1763, p. 13:14–24). The Hotels were located throughout the world, with a number in Asia and Europe, and two (the Setai in Miami and the Heritage House in Mendocino, California) in the United States. (A-831, ¶ 10).

Ms. Lee produced such marketing collaterals in response to each order placed over this period of time through various entities she owned (collectively the "Wave Entities"). (A-1419, ¶ 2; A-1421, ¶¶ 7–8). Orders were most typically placed by GHM on behalf of the Hotels. (A-1421 ¶ 7; A-1812, lines 15-22). Most orders placed by GHM over the years were for marketing collaterals that did not require any photographs. (A-1421, ¶ 8).

In order to fill orders placed by GHM that did require photographic images, Ms. Lee conducted photo shoots of each of the various Hotels through the Wave Entities. (A-1421, ¶ 8). It was from these photo shoots that the Photographs of the Hotels at issue were produced.

*The Relevant Contractual Documents*

As previously noted, Ms. Lee operated her business under several Wave Entities.  Throughout their working history, GHM and the Hotels worked exclusively with Ms. Lee and the Wave Entities to produce marketing collaterals, and each transaction occurred under the same course of conduct:  (1) a request for work was made by GHM on behalf of one of the Hotels it managed; (2) the Wave Entities sent a production estimate (and revised estimates if negotiations continued) to GHM and the relevant Hotel, (3) terms were agreed to as reflected in a final production estimate; (4) the work was completed by the Wave Entities; and (5) the Hotels paid for the work.  (A-1422, ¶ 11; A-1441 to A-1444; A-1819 to A-1820, pp. 69:22–70:7; A-1839 to A-1840, pp. 89:8–90:11).  Under this more than decade-long course of conduct, the respective Hotel and GHM reviewed and approved each production estimate issued by the relevant Wave Entity at the time.  (A-1819 to A-1820, pp. 69:22–70:24).  In fact, GHM's then-Vice President, Ralf Ohletz, testified he reviewed each such production estimate and was aware of their terms, under which the Wave Entities would fulfill orders placed with it.  (A-1819 to A-1820, pp. 69:22–70:24).

These production estimates, all no more than a page or two in length, state that the Wave Entities *"reserve the intellectual property copyright to*

10

*all designs/soft copies/material/photography/projects undertaken"* and
confirm that the Wave Entities would only "*proceed on the basis that this
estimate is wholly acceptable unless advised to the contrary in writing
before the work is undertaken."* (*See, e.g.*, A-1441 to A-1444; A-1839 to A-
1842, pp. 89:23–92:16).

The Wave Entities hired a cameraman, Masano Kawana, to assist in
taking the Photographs. (A-1422, ¶ 9; A-1653, pp. 167:18–168:22; A-1767,
p. 17:13–24). The written agreements between the Wave Entities and Mr.
Kawana and his company, called Irieeyes, stated the Wave Entities owned
the copyrights to the Photographs. (A-1440; A-2349 to A-2350). As a belt-
and-suspenders approach, Mr. Kawana also executed a confirmatory
assignment in 2013 confirming that at the time of the creation of the
Photographs, it was the understanding and intention of Mr. Kawana and his
company that the copyrights were to be solely owned by Ms. Lee (since she
was the owner of the Wave Entities).[1] (A-2296 to A-2301).

After each photo shoot of a Hotel, the Wave Entities provided the
finalized photographs to both the respective Hotel and to GHM on a CD-
ROM to make reordering of marketing collaterals requiring photographs
easier. (A-1423, ¶ 13).

---

[1] This assignment was recorded with the U.S. Copyright Office on May 20, 2015, as
reflected on the document. (A-2296 to A-2301).

*GHM's and the other Defendants' infringement of Appellant's copyrights*

Sometime in approximately 2007, without any formal notice, GHM abruptly stopped working with Ms. Lee and the Wave Entities. (A-1425, ¶ 21). At some point thereafter, unbeknownst to Ms. Lee, and without notification or approval, GHM and/or the Hotels disseminated the Photographs to numerous third parties and, further, GHM began using them on a new GHM website not created by a Wave Entity or Ms. Lee.[2] (A-1425, ¶ 21; A-1938 to A-1942). In turn, some of the third party recipients of the Photographs, many of whom are defendants in this action, further provided the Photographs to yet other third parties. (A-1938 to A-1942).

As a result of GHM's and others' significant and widespread unauthorized dissemination of the Photographs, the Photographs are now displayed on numerous third party websites without Appellant's authorization or compensation and continue to be seen daily by thousands of users. (A-381 to A-826; A-851 to A-861, ¶¶ 98–156). These other infringing websites are owned or operated by the other defendants named in the First Amended Complaint, almost all of which are companies based in the United States that cater to American consumers, including consumers in

---

[2] Numerous defendants have sought indemnity from GHM for Photographs they received from GHM and used without Appellant's authorization. (A-1938 to A-1962).

12

New York. (A-832 to A-845, ¶¶ 12–68). Many of these defendants are, in fact, based in New York. (*See* A-832 to A-845, ¶¶ 12–68).

*The formation of Appellant and assignment of rights to it.*

On or about September 15, 2011, Ms. Lee formed Appellant The Wave Studio, LLC as an intellectual property holding company. (A-1616, pp. 18:22–19:7; A-830, ¶ 9). Ms. Lee and the Wave Entities entered into a series of assignments of copyrights to the Photographs to Appellant to effectuate this purpose. (A-1289 to A-1291; A-1295 to A-1302; A-1432; A-2279 to A-2290).

VII.    SUMMARY OF ARGUMENT

This is a case for widespread infringement of U.S. copyrights perpetrated in the United States by numerous American companies, and a small number of foreign companies, doing business here and catering to American consumers, including those in New York. As such, this case is firmly rooted in the United States. The District Court erroneously disregarded these connections to Appellant's chosen venue in dismissing Appellee on *forum non conveniens* grounds.

Appellant, an intellectual property holding company, was formed to house and protect the copyrights to the Photographs created by Jr Lee throughout her career. The copyrights in the Photographs have been

13

registered with the United States Copyright Office, and this action was instituted to enable Appellant to seek redress for rampant infringement of Appellant's copyrights in the United States.

Appellee GHM, though formed and headquartered in Singapore, does business in the U.S., has two sales offices in this country (one in New York), and infringed Appellant's Photographs here in the U.S.  All of the remaining 70+ defendants are either American corporations (many in New York) or foreign corporations doing business in the U.S.  All the defendants, including Appellee, cater to American consumers and have infringed Appellant's copyrights in the United States.  Given these numerous contacts with New York and the United States, this case belongs in this country.

In dismissing Appellee on *forum non conveniens* grounds, however, the District Court incorrectly focused on the genesis and first publication of the Photographs in Singapore to construe this as a dispute local to that country.  To do so, the District Court had to improperly sever the 70+ other American defendants, ignore Appellee's own offices and infringing business activities in the United States, and consider only the threshold issue of copyright ownership (rather than all elements of Appellant's U.S. copyright infringement claims) to construe this action as one originating in Singapore. This was reversible error.

14

The District Court, in weighing the deference owed to Appellant's choice of venue and in considering the various *forum non conveniens* factors, misconstrued this as a skirmish between two Singaporean entities. It is far from that. Rather, it is a dispute to enforce copyrights against widespread infringements in the United States by numerous companies, including Appellee. The District Court disregarded these foundational elements of Appellant's claims in this case. To do so was an abuse of discretion.

The District Court further failed to safeguard Appellant from prejudice that likely flows from dismissing Appellee. Specifically, the District Court did not condition its dismissal on the acceptance by Singapore of Appellant's case for U.S. copyright infringement, Appellee's acceptance of Singapore as a forum for Appellant's claims, and/or tolling of any applicable U.S. statute of limitations in a Singapore action for U.S. copyright infringement or one re-filed later in the United States after establishing copyright ownership rights in Singapore.

Finally, the District Court unreasonably balanced the private and public factors applicable to a *forum non conveniens* analysis, and GHM also failed to meet its burden on those factors.

Taken together, the District Court abused its discretion in dismissing GHM from this action. For the reasons further explained below, this Court should reverse the District Court's grant of summary judgment and dismissal on *forum non conveniens* grounds with instructions to decide the parties' summary judgment motions on the substantive issues raised in those motions. If this Court declines to do so, it should at the very least modify the District Court's decision to protect against the prejudice naturally consequent from the District Court's unconditional dismissal.

## VIII. STANDARD OF REVIEW

This Circuit generally reviews a district court's dismissal on *forum non conveniens* grounds on an abuse of discretion standard. *DiRenzio v. Philip Servs. Corp.*, 294 F.3d 21, 27 (2d Cir. 2002). A district court abuses its discretion when "'(1) its decision rests on an error of law . . . or a clearly erroneous factual finding, or (2) its decision—though not necessarily the product of a legal error or a clearly erroneous factual finding—cannot be located within the range of permissible decisions.'" *Id*. (quoting *Zervos v. Verizon N.Y., Inc.*, 252 F.3d 163, 169 (2d Cir. 2001)). In the context of *forum non conveniens*, this Circuit reverses "when a district court fails to consider all the relevant factors or unreasonably balances those factors." *Id.*;

16

*Norex Petroleum Ltd. v. Access Indus., Inc.*, 416 F.3d 146, 153 (2d Cir. 2005).

IX.    ARGUMENT

   A.    The *Forum Non Conveniens* Test

This Circuit weighs three factors in analyzing a claim of *forum non conveniens*: (1) the level of deference given to the plaintiff's choice of forum; (2) whether an alternative forum exists; (3) the balance of private and public factors implicated in the plaintiff's choice of forum. *Guerrini v. Atmel Corp.*, 667 Fed. App'x 308, 310 (2d Cir. 2016) (citing *Iragorri v. United Techs. Corp.*, 274 F.3d 65, 70–74 (2d Cir. 2001) (*en banc*)). For the third consideration, the private factors include:

> the interests of the litigants in having the case tried in a particular forum; the relative ease of access to sources of proof; the availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; the possibility of a view of relevant premises, if such a view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious, and inexpensive.

*Carey v. Bayerische Hypo-Und Vereinsbank AG*, 370 F.3d 234, 237 (2d Cir. 2004).  The public factors include: "court congestion; the interest of forums in having local disputes decided at home; and the interest in having issues of law decided by courts of the nation whose law is involved." *Id.*

Notably, the defendant seeking dismissal for *forum non conveniens*
bears the burden at steps two and three of the test. *Erausquin v. Notz, Stucki
Mgmt. (Bermuda) Ltd.*, 806 F. Supp. 2d 712, 724 (S.D.N.Y. 2011).

B.     The District Court Abused Its Discretion by Failing to Fully
       Consider Each of the *Forum Non Conveniens* Factors and
       Unreasonably Balancing Those Factors.

In *forum non conveniens* cases, failing to consider each of the
applicable factors, or unreasonably balancing those factors, constitutes an
abuse of discretion. *DiRenzio*, 294 F.3d at 27. As further discussed below,
the District Court committed a number of reversible errors:

(1)    Failing to provide the requisite deference to Appellant's
       choice of forum.

(2)    Inappropriately severing Appellant's claims against
       Defendant GHM in order to avoid the requirement that
       the alternative forum be viable against all defendants.

(3)    Failing to fully consider whether Singapore courts can or
       will adjudicate claims of U.S. copyright infringement
       occurring in the United States and governed by U.S. law.

(4)    Failing to condition its dismissal order on the Singapore
       court's acceptance of the case, GHM's acceptance of
       Singapore as a venue for the litigation, and tolling of the

18

statute of limitations under U.S. copyright law in any

action against GHM for U.S. copyright infringement

brought in Singapore or in a subsequent action for such

claims in the Southern District of New York if (as is

extremely likely) the Singapore courts will not hear them.

(5)     Misapplying the private factors and failing to find that

Appellee did not meet its burden.

(6)     Misapplying the public factors and failing to find that

Appellee did not meet its burden.

1.     The District Court did not afford Appellant's choice of
forum the high deference required by law.

A plaintiff is entitled to significant deference in its choice of forum.

*Iragorri*, 274 F.3d at 71.  As the District Court's opinion acknowledged, the

"greater the plaintiff's or *the lawsuit's* bona fide connection to the United

States and to the forum of choice," the more difficult it is to obtain dismissal

on *forum non conveniens* grounds.  (A-2378) (emphasis added) (citing *In re

Optimal U.S. Litig.*, 837 F. Supp. 2d 244, 251 (S.D.N.Y. 2011).  Here,

Appellant is no mere sham corporation, and this action is deeply rooted in

the United States.

Holding companies created to hold and enforce intellectual property rights, like Appellant, are perfectly legitimate entities and are not shell companies. *See, e.g., Masa LLC v. Apple Inc.*, No. 4:15-CV-00889-AGF, 2016 WL 629263, at *1–4 (E.D. Mo. Feb. 17, 2016) (denying forum transfer, finding plaintiff non-practicing patent assertion entity's choice in forum was entitled to deference); *Micro Design LLC v. Asus Comput. Int'l*, No. CV 14-837-LPS-CJB, 2015 WL 2089770, at *5–6 (D. Del. May 1, 2015) (same); *In re Barnes & Noble, Inc.*, 743 F.3d 1381, 1384 (Fed. Cir. 2014) (same); *Advanced Processor Techs. LLC v. Atmel Corp.*, No. 2:12-CV-152-JRG-RSP, 2013 WL 1279053, at *10 (E.D. Tex. Mar. 26, 2013) (same). Because holdings companies are legitimate businesses run for bona fide purposes, there is no reason they should receive less deference in their choice of venue. Neither GHM nor the District Court provided any authority to the contrary. In fact, the District Court actually acknowledged the legitimacy of holding companies like Appellant as business entities and did not conclude that the nature of Appellant's business warranted less deference. (A-2380, n.11).

Instead, the District Court incorrectly determined that Appellant had no connection to Appellant's chosen forum, concluding in essence that this is a foreign dispute, not a domestic one. This was error. Appellant and this

20

litigation have numerous connections to New York and to the United States. Appellant's choice of venue was therefore appropriate and entitled to significant deference.

> a) This is a local dispute.

Contrary to the characterization by the District Court that this is a dispute between two Singaporean entities that belongs in that country, the fundamental basis for this case is the enforcement of copyrights here in the United States. (A-56 to A-866). Appellant was formed in the State of New York for the legitimate purpose of enforcing Appellant's copyrights, including in the United States. Appellant owns multiple copyright registrations from the U.S. Copyright Office for the works at issue and is seeking to enforce those registrations here. All the alleged infringements occurred in the United States under U.S. copyright law. Therefore, this dispute is, at its core, local to the United States, and it would be incongruous for Appellant, a domestic company (albeit one owned by a foreign national) to choose any other country to enforce its registered copyrights against U.S. infringements by American companies and those doing business in the U.S.

Indeed, as discussed below in Section IX(B)(2), it is unlikely Appellant could have subjected the near entirety of defendants to service of process, let alone liability for U.S. infringements, in GHM's proposed

forum, Singapore.  Given that the infringements took place throughout the United States, were perpetrated by American companies or those doing business here, and that Appellant chose to form in New York, Appellant's choice to file this action in the Southern District of New York was the most convenient and logical.  *See Norex Petroleum*, 416 F.3d at 155–56 (reversing dismissal on *forum non conveniens* grounds, observing "it appears doubtful from the record that [the plaintiff] could have perfected jurisdiction over all defendants in either of its presumptively convenient home forums, Canada or Cyprus, or even in defendants' preferred forum, Russia.").  This is therefore a fundamentally local dispute, and Appellant's choice of forum should have been afforded great weight.

> b) The District Court improperly withheld deference to Appellant's chosen forum on the untrue assertion that Appellant Wave is foreign, in contradiction of this Circuit's jurisprudence.

As this Circuit has recognized, "[i]n all [its] cases in which [it has] deemed a plaintiff 'foreign' and accorded that plaintiff's choice of forum less deference, the plaintiffs involved were foreign corporations or foreign-national individuals residing abroad."  *Wiwa v. Royal Dutch Petroleum Co.*, 226 F.3d 88, 103 (2d Cir. 2000).  This Circuit does not afford "less

22

deference to a foreign plaintiff's choice of a United States forum where that plaintiff was a U.S. resident." *Id*. (citing cases).

Appellant is a New York limited liability company formed for the purposes of holding the intellectual property created by the Wave Entities, including the copyrights in the Photographs, a purpose the District Court's opinion itself acknowledged as a legitimate business model. (A-2380, n.11). Appellant is therefore not a "foreign" plaintiff at all. To the extent that the District Court considered Appellant foreign because its owner is a person residing outside the United States, that consideration is contrary to this Circuit's decision in *Wiwa*. Appellant is no sham entity, and its choice of forum is therefore entitled to the utmost deference. The District Court erred in not providing it.

> c)   The cases cited by the District Court (and GHM) that hold foreign plaintiff's are entitled to less deference do not apply.

The District Court's opinion cites a handful of cases to support its conclusion that Appellant's choice of forum is owed little deference. (A-2378 to A-2380). None of these cases supports the District Court's conclusion.

For example, *Iragorri*, 274 F.3d 65, reversed a dismissal on *forum non conveniens* grounds of a personal injury plaintiff's suit in the United

States over injuries sustained in Colombia. The decision merely cites the general rule, without context, that courts do not provide as much deference to foreign plaintiffs' venue choices. As recognized in *Wiwa*, however, this Circuit's jurisprudence on deference owed to foreign plaintiffs had, to that date, only applied to "foreign corporations or foreign-national individuals residing abroad." 226 F.3d at 103. Appellant, by contrast, is an American company based in New York. Under *Wiwa*, that Appellant's owner is a foreign national is of no moment. Appellant is therefore entitled to deference in its choice of venue.

The next case cited by the District Court, *RI Group LLC v. Trefonisco Mgmt. Ltd.*, 949 F. Supp. 2d 546 (S.D.N.Y. 2013), is equally inapposite. There, an American company sued Russian and Cypriot defendants for fraud and breach of fiduciary duties that occurred in Russia. *Id*. at 549–50. Moreover, the plaintiff there was a defunct company previously owned by Russian nationals, resurrected solely to pursue the litigation. *Id.* at 552.

This case is materially different. While the underlying facts leading up to the first publication of the Photographs took place in Singapore, Appellant was formed in the United States for the purpose of holding the Wave Entities' intellectual property and enforcing the rights in that intellectual property should any third party infringements arise. Moreover,

the infringements in this case (even Appellee's) took place in the United States, in stark contrast to the illegal foreign acts alleged in *RI Group*. Thus, though the genesis of the works underlying this action lies outside of the United States, this is a foundationally American dispute.

Similarly, in *Broad. Rights Intern. Corp. v. Societe du Tour de France, S.A.R.L.*, 675 F. Supp. 1439 (S.D.N.Y. 1987), cited by the District Court, an American company owned by a foreign national claimed breach of contracts and fiduciary duty by French companies perpetrated in France. The case, once again, implicated wrongful acts outside the United States. The situation in *Broadcasting Rights* is therefore distinct from, and inapplicable to, an American company like Appellant that, though owned by a foreign national, seeks to enforce its copyrights against widespread infringement perpetrated in the United States by numerous American companies and others doing business here.

Collectively, the precedent cited by the District Court does not undercut the simple fact that Appellant is seeking to enforce its rights in the United States against copyright infringement occurring here. Therefore, none of the cases the District Court cited diminishes the great deference owed Appellant's choice of venue.

d)     Appellant's chosen venue was appropriate and
does not represent forum shopping.

For copyright actions, venue is governed by 28 U.S.C. §§ 1391(b) and

1400(a).  *Children's Television Workshop and Muppets v. Mary Maxim,*

*Inc.*, No. 83 Civ. 2448 (RWS), 1984 WL 1349, at *1 (S.D.N.Y. March 9,

1984).  Under 28 U.S.C. § 1400(a) venue is proper in any district in which

one of the Defendants "resides or may be found."  A defendant "may be

found" in any venue in which it is subject to personal jurisdiction.  *Jewell v.*

*Magic Lifeboat*, No. 16-cv-1587 (NG) (PK), 2017 WL 2226572, at *7

(E.D.N.Y. May 19, 2017).  Under 28 U.S.C. § 1391(b)(3), if no jurisdiction

exists where all defendants reside or may be found and no district exists

where a substantial part of the events or omissions giving rise to the claim

occurred, venue lies where at least one of the defendants is subject to

personal jurisdiction.  Such is the case here.

Given that the copyright infringement alleged in this action took place

in the United States, Appellant's choice of venue was appropriate and in no

way implicates forum shopping, contrary to the District Court's suggestion.

(A-2379 to A-2380).  Indeed, the vast majority of defendants are U.S.-based

and cater to American consumers. (A-831 to A-845, ¶¶ 10–68).  All, as

asserted in the First Amended Complaint, are subject to personal jurisdiction

in the Southern District of New York. (A-830, ¶ 7).  GHM has not refuted

26

the exercise by the Southern District of New York of personal jurisdiction over the other defendants.[3]  GHM and its subsidiaries also contracted with American hotels (the Setai in Miami and Heritage House in Mendocino, California) for management services and have a server located in the United States where its infringing website is hosted.  (A-1906 to A-1907, pp. 82:9–87:14).

Thus, because under § 1391(b)(3) venue is proper where any one defendant is subject to personal jurisdiction, there were a number of possible districts in the United States where venue would have been proper.  The Southern District of New York is one of those viable venues.  Its (and this Circuit's) well-developed copyright jurisprudence further supports Appellant's choice to sue where it did.  The fact that the Southern District of New York is also where Appellant's first attorneys of record are located does not make the decision to sue there any less legitimate or entitled to less

---

[3] GHM did argue at summary judgment, however, that *it* is not subject to personal jurisdiction in the Southern District of New York.  (A-889 and A-919 to A-921).  The District Court's order did not rule on that issue.  (A-2389).  While personal jurisdiction is therefore not an issue on appeal, for the reasons argued in its motion for summary judgment, Appellant maintains Appellee is subject to personal jurisdiction in the Southern District of New York.  (A-1345 to A-1347; A-1910, pp. 98:25–101:14).  Indeed, GHM has a sales office in New York aimed at driving sales of the Hotels it manages in that area, it and its subsidiaries contracted with American hotels (the Setai in Miami and Heritage House in Mendocino, California) for management services, and it has litigated this case vigorously since 2013 with no prejudice or difficulty.  (A-1906, pp. 82:9–83:25; A-1009, ¶ 5; A-1906, pp. 84:5–85:22; A-1909, pp. 94:5–95:14; A-1910, pp. 98:25–101:14).

deference.  The District Court's focus on this fact ignored this action's greater connections to the United States and New York.

The Southern District of New York was therefore a sound venue for this action.  Appellant's choice of venue should have been afforded great deference.  The District Court's failure to provide that deference was reversible error.

> 2.  Singapore is not an adequate forum.

In considering whether there is an adequate alternative forum, a court must determine whether: (1) the defendants are subject to service of process in the proposed alternative forum and (2) the transferee forum permits litigation of the subject matter of the dispute.  *In re Hellas Telecomms. (Luxembourg) II SCA*, 535 B.R. 543, 592 (S.D.N.Y. 2015).  If the moving party fails to establish the alternative forum is adequate, dismissal must be denied, regardless of the level of deference owed to the plaintiff's choice of forum.  *Norex Petroleum*, 416 F.3d at 157.

As further discussed below, the District Court erred in multiple ways in its analysis of the adequacy of Singapore as an alternative forum.

a)     The District Court abused its discretion by improperly severing Appellant's claims against GHM in order to grant summary judgment on *forum non conveniens* grounds because such grounds are only appropriate when the alternative forum is available for all defendants.

Under the doctrine of *forum non conveniens*, the District Court had to consider the convenience of *all* defendants, not just Appellee. *See PT United Can Co. v. Crown Cork & Seal Co.*, 138 F.3d 65, 73 (2d Cir. 1998) (recognizing that a court cannot dismiss an action for *forum non conveniens* grounds unless it satisfies "itself that the litigation may be conducted elsewhere against *all* defendants.") (emphasis added). To skirt this obligation, the District Court severed the claims against GHM so that it could consider those claims in isolation under this Circuit's "sever and transfer" doctrine first described in *Wyndham Assocs. v. Bintliff*, 398 F.2d 614, 618 (2d Cir. 1968). (A-2387 to A-2388). To do so was reversible error.

As recognized by the District Court's opinion, severance is an extreme remedy and should be exercised only in exceptional circumstances. (A-2387) (citing *Deskovic v. City of Peekskill*, 673 F. Supp. 2d 154, 160 (S.D.N.Y. 2009)). While a court may sever where venue is proper for one defendant but not for another, severance of parties or claims is discouraged where there is (1) a venue that would be proper for all defendants in which

29

the entire case could be decided, (2) the claims and parties are intertwined. *Jewell v. Magic Lifeboat,* No. 16–cv–1587 (NG) (PK), 2017 WL 2226572, at *8 (E.D.N.Y. May 19, 2017). Severance was improper for both those reasons.

Here, there is no evidence, analysis, or even argument in the record that a Singapore court could or would even adjudicate a case of copyright infringement by American companies perpetrated in the United States.[4] Indeed, neither GHM nor the District Court considered that the Southern District of New York is a venue in which Appellant can enforce its copyrights against all the defendants (including GHM) while Singapore is not.

Moreover, as Appellant noted in its summary judgment papers, the parties here are inextricably intertwined, as the other defendants have signaled their intention to drag GHM back to the United States to address indemnity claims even if this case were temporarily dismissed against GHM in favor of a Singapore action. (A-1341, n.7; A-1938 to A-1962). Thus, under *Jewell*, severance is strongly disfavored and was inappropriate here.

---

[4] As discussed in Section IX(B)(2)(b), below, neither GHM, its Singapore law expert, nor the District Court ever considered or even addressed whether Singapore courts can or will adjudicate copyright infringements taking place in the United States and governed by U.S. copyright law, despite Appellant's raising the issue below. (A-891 to A-1008; A-1968 to A-2043; A-2368 to A-2389).

Further, the "sever and transfer" doctrine endorsed in *Wyndham Associates*, under which the District Court here severed the claims against GHM from the claims against the remaining 70+ defendants, was "developed to address a situation where transfer under 28 U.S.C. § 1404(a) was warranted but could not be effectuated on account of a single claim that could not have been brought in the transferee jurisdiction." *Tomjai Enters. Corp. v. Laboratorie Pharmaplus USA Inc.*, No. 12 Civ. 3729(RWS), 2012 WL 3104891, *7 (S.D.N.Y. July 31, 2012). To avoid this result, this Circuit "endorsed the application of Federal Rule of Civil Procedure 21 to sever the offending claim in order to facilitate the transfer." *Id*. This case is factually distinguishable and does not warrant severance under *Wyndham Associates*.

When considering whether to sever, the District Court should have analyzed: whether the issues sought to be tried separately are significantly different from one another; whether the separable issues require the testimony of different witnesses and different documentary proof; whether the party opposing the severance will be prejudiced if it is granted; and whether the party requesting the severance will be prejudiced if it is not granted. *Tomjai*, 2012 WL 3104891, at *8. Applying the *Tomjai* factors, it is clear severance was improper.

31

First, this is not the same, or even an analogous, situation as in *Wyndham Associates*. There, the Southern District of New York severed two New York-based defendants and transferred the case against the remaining six defendants to Texas so that the case could be considered along with numerous already-pending actions in that state over the same legal and factual issues. *Wyndham Assocs.*, 398 F.2d at 615–18. The court had no choice there but to sever because the action could not have been brought against one of the severed New York defendants. *Id*. at 618. Failure to sever, then, would have prevented the action against the other (transferred) defendants from being considered in the same court as the numerous other actions pending over the same parties, transactions, and issues. *Id*. at 618–19. Transfer was therefore clearly in the interest of judicial economy.

Here, by contrast, severance only allowed the skirting of one issue— the issue of copyright ownership under Singapore law—but did not dispose of the case overall. There are also no other duplicative actions over U.S. copyright infringements pending in any other foreign jurisdiction with which to consolidate this action, though the District Court's severance now unnecessarily requires one. Meanwhile, the issue of copyright ownership to be litigated in Singapore, rather than being different, is identical to the one that will have to be re-litigated here against the remaining defendants once

Appellant has litigated against GHM in Singapore. Thus, this issue now must be litigated twice in two separate countries, rather than once here. This is the opposite of judicial economy.

Second, with respect to the second *Tomjai* factor, the remaining litigation in New York will still require testimony of GHM witnesses to address the other defendants' indemnity claims once the stay is lifted. Presumably the GHM witnesses would be the same, or at least would overlap, in both a severed action pending in Singapore and in the New York action. This double duty severely undercuts the appropriateness of the severance.

Third, Appellant will be prejudiced by the severance. As a consequence of the District Court's severance, Appellant will have to adjudicate its claims for ownership of copyright under Singapore law in Singapore against GHM (or try to assert its U.S. copyright claims there with no indication or assurance they will be heard), then in all likelihood re-file its U.S. infringement claims against GHM here, consolidate that case with this action, and litigate that infringement, as well as the infringement claims against the other defendants, once again. For a small holding company owned by a design professional and artist, this prejudice is far greater than for a multi-national company such as GHM to litigate Appellant's claims

here. Failure to consider such prejudicial financial hardship is reversible error in the *forum non conveniens* context. *See, e.g., Wiwa*, 226 F.3d at 103.

Fourth, GHM, on the other hand, will not be prejudiced by having to litigate the threshold issue of copyright ownership here. Quite the opposite. Even if Appellant were to go to Singapore and successfully have its claims of U.S. copyright infringement litigated there—a possibility of which there is no evidence, indication, or analysis in the record—and not re-file against GHM here, the other defendants have made clear they will bring GHM right back into this litigation once the stay is lifted to litigate indemnity cross-claims. Further, if the Singapore courts do not address Appellant's claims of U.S. copyright infringement against it, GHM will have to re-litigate those claims once again in the United States. Thus, even GHM will likely be prejudiced by the severance.

As a result, the severance, contrary to the District Court's conclusion, is not in the interest of judicial economy. As cautioned by *Tomjai*, severance is not appropriate under such circumstances. The District Court's severance should therefore be overturned and its finding of an adequate alternative forum reversed.

34

b)    The District Court failed to fully consider the adequacy of the alternative forum by not addressing whether a Singapore Court can or would actually adjudicate Appellant's claims of infringement of U.S. copyright law against Appellee.

Setting aside the impropriety of the severance, to fulfill its obligation under the *forum non conveniens* analysis, the District Court was required to fully consider whether "the [transferee] forum permits litigation of the *subject matter of the dispute*." *Hellas Telecomms.*, 535 B.R. at 592 (emphasis added). Failure to fully consider the *forum non conveniens* factors is reversible error. *See Norex*, 416 F.3d at 153 (citing *Pollux Holding Ltd. v. Chase Manhattan Bank*, 329 F.3d 64, 70 (2d. Cir. 2003)). Here, the District Court failed to fully consider whether a Singapore court can or will adjudicate a claim of copyright infringement of U.S. registered copyrights perpetrated in the U.S. By failing to do so, the District Court abused its discretion in dismissing GHM.

A case for copyright infringement has two elements: (1) ownership of a valid copyright and (2) unauthorized copying of the copyrighted work. *Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 51 (2d Cir. 2003). Rather than address both elements of Appellant's copyright infringement claim against GHM, the District Court improperly cabined its analysis to whether a Singapore court could decide the threshold issue of copyright ownership

35

under Singapore law. The District Court therefore entirely ignored the second element of copyright infringement in its analysis.

While there is no doubt a Singapore court could adjudicate the threshold element of copyright ownership under Singapore law, it would also have to decide whether there was unauthorized copying of the copyrighted works under U.S. law. *See Itar-Tass Russian News Agency v. Russian Kuriar, Inc.,* 153 F.3d 82, 88–92 (2d Cir. 1998) (in copyright infringement actions involving foreign works the element of copyright ownership is governed by the country of first publication while the element of infringement—i.e., unauthorized copying of the copyrighted works—is resolved under U.S. copyright law). Appellant pointed out as much in its moving papers on summary judgment. (A-1350 to A-1351) (stating that this "case is not just about the threshold issue" and that Singapore does not have the ability to decide issues of infringement in the United States).

Yet neither GHM's briefs on the cross-motions for summary judgment, nor the declarations of its Singapore law expert, nor the District Court's opinion ever even considered or addressed whether the Singapore courts could or would adjudicate Appellant's full claims (i.e., both elements) of U.S. copyright infringement. (A-891 to A-1008; A-1968 to A-2043; A-2368 to A-2389). More fundamentally, there is no evidence or indication in

36

the record whatsoever, nor any analysis of Singapore law at all, to support the conclusion that the Singapore courts can or will adjudicate issues of infringement on American soil under American law. The District Court's opinion is therefore missing half the equation. This omission constitutes reversible error.

Instead, to support its conclusion that Singapore is an adequate forum, the District Court cites three cases, two from a sister circuit and one from the Southern District of New York. *See Van Schijndel v. Boeing Co.*, 263 F. App'x 555, 557 (9th Cir. 2008) (affirming *Van Schijndel v. Boeing Co.*, 434 F. Supp. 2d 766, 769 (C.D. Cal. 2006)); *Creative Tech., Ltd. v. Aztech Sys. Pte., Ltd.*, 61 F.3d 696, 704 (9th Cir. 1995); *Anwar v. Fairfield Greenwich Ltd.*, 742 F. Supp. 2d 367, 377 (S.D.N.Y. 2010). None of these cases is binding on this Court, nor do they establish that Singapore is an adequate alternative forum in this case.

For example, neither *Van Schijndel* nor *Anwar* involved copyright infringement; they were instead product liability and shareholder derivative suits, respectively. *See Van Schijndel*, 434 F. Supp. 2d at 768 (product liability suit regarding Singapore Airlines crash in Taiwan); *Anwar*, 742 F. Supp. 2d at 369–70 (suit regarding investment advice given to Dubai residents by the Singapore branch of UK bank). To the extent the courts in

those cases determined Singapore was an adequate alternative forum, it was for reasons that have no application to this case. Just because Singapore was an adequate alternative forum in those cases does not mean it is adequate in a case based on wholly different facts and claims for relief.

Similarly, *Creative Technology* is distinguishable because there were only two parties in that case, a single plaintiff and single defendant, and the defendant was susceptible to service in Singapore. 61 F.3d at 698–99. Here, there are 80 defendants, only one of which is obviously susceptible to service in Singapore. This case is therefore fundamentally distinct from *Creative Technology*.

Moreover, to the extent *Creative Technology* factually overlaps with this case, this Court should decline to follow its sister circuit's decision. As the dissent in that case vociferously noted, the decision had no support in the record and was therefore erroneous. *Id.* at 705 (Ferguson, C.J., dissenting) ("The record before us contains not a single Singapore statute or opinion authorizing the type of legal approach that the majority assumes the High Court will follow."). Indeed, Judge Ferguson noted in the dissent in *Creative Technology*, that following the Ninth Circuit's decision leads to the incongruous (and, frankly, unjust) result that "when foreign persons own

38

American copyrights, it is not convenient for an American court to adjudicate their claims." 61 F.3d at 705. That is not, nor cannot be, the law.

On the contrary, this is precisely the type of case in which "'dismissal [is] not . . . appropriate where the alternative forum does not permit litigation of the subject matter of the dispute.'" *Creative Tech.*, 61 F.3d at 706–07 (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255 n.22, 102 S. Ct. 252, 265 (1981)). Indeed, where else but in the United States would an American company, even one owned by a foreign national, sue American companies (or those doing business in the United States) for U.S. copyright infringements occurring in the United States? To force an American company to go to a foreign jurisdiction to redress such U.S. copyright violations just because its owner is a foreign national defies logic and justice.

Thus, the District Court failed to fully consider whether Singapore is an adequate alternative forum to hear Appellant's U.S. copyright infringement claims against GHM and the other defendants. This Court should therefore reverse the District Court's finding that Singapore is an adequate alternative forum.

39

c)    The District Court further abused its discretion in determining Singapore is an adequate alternative forum because doing so would likely give GHM a statute of limitations defense that GHM would not have otherwise had.

Even if this Court affirms the District Court's ruling that Singapore is an adequate alternative forum, the District Court's dismissal order warrants modification to eliminate a possible statute of limitations defense that, but for the dismissal, GHM would not have.

Under the Copyright Act, the statute of limitations for copyright infringement is three years from the date of discovery. 17 U.S.C. § 507(b). The statute tolls, however, for so long as the infringement continues uninterrupted. *See Kregos v. Assoc. Press*, 3 F.3d 656, 662 (2d Cir. 1993). Once a continuing infringement ends, the three-year statute no longer tolls and runs three years after the infringing activity ends. *Repp v. Webber*, 914 F. Supp. 80, 83 (S.D.N.Y. 1996).

Here, Appellant learned of GHM's infringing activity no earlier than 2012. (A-1105 to A-1106, in response to Request for Admission 265; A-1425 to A-1426, ¶ 22). Thus, Appellant's complaint, filed on December 31, 2013, was timely and within the statute of limitations for any infringing activity existing as of the date of discovery in 2012.

The District Court dismissed GHM from this action on March 10, 2017, instructing Appellant to seek redress against GHM in Singapore.  (A-2389).  Because Appellant is claiming GHM has infringed its copyrights here in the United States under American law—and neither GHM nor the District Court established that a Singapore court can or will even entertain an action for U.S. copyright infringements—it is unclear if the Singapore courts will accept the case.  Even if they did, without conditioning the dismissal on a tolling of the U.S. statute of limitations over such claims, GHM would presumably have a statute of limitations defense over any accused infringements that ceased three or more years prior to commencement of the action in Singapore.

And if, as is likely, the Singapore courts decline to adjudicate claims for U.S. copyright infringement (or even if they agree to just decide the issue of copyright ownership), Appellant's claims in any subsequent copyright infringement action re-filed against GHM in the Southern District of New York would likewise be time-barred for any infringing acts ceased three years or more prior to the filing of that subsequent action here.  In either scenario, statute of limitations is a defense over such claims GHM would not have had but for the District Court's erroneously unconditional dismissal order.

41

The District Court therefore erred in not addressing the U.S. statute of limitations in its order.[5] *See, e.g., Usha (India) Ltd. v. Honeywell Int'l, Inc.,* 421 F.3d 129, 135–36 (2d Cir. 2005) (in dispute governed by Indian law, district court erred in not modifying its dismissal for *forum non conveniens* to address possibility of alternative forum not being adequate and any statute of limitations under Indian law the defendant could raise). The District Court's decision should therefore be reversed or at the very least, as discussed in the next section, modified to remove any possible prejudice to Appellant flowing from the dismissal of GHM from this action.

        d)     If the District Court's dismissal is nonetheless affirmed, this Court should modify it to avoid prejudice to Appellant.

A district court may condition a dismissal on *forum non conveniens* grounds on the acceptance of the case by the foreign presumptive transferee court, the acceptance by the defendant of jurisdiction in the foreign forum, and on the defendant's waiver of any statute of limitations defense that may

---

[5] The District Court did, however, mention that neither party stated there are any procedural bars to bringing copyright claims made against GHM in Singapore. (A-2382). This is not wholly accurate. As noted previously, Appellant argued that Singapore courts could not or would not decide issues of U.S. copyright infringement. (A-1350 to A-1351). GHM failed to respond to this crucial question. Thus, there is not a single citation to Singapore statute or precedent that the Singapore courts can or will hear claims of U.S. copyright infringement. There was therefore no way for Appellant to foresee that it should address issues of U.S. statutes of limitations over American copyright claims brought in Singapore when GHM had failed to meet its burden that such claims could even be heard in Singapore.

have arisen since the filing of the case.[6]  *Calavo Growers*, 632 F.2d at 968;

*see also Bank of Credit and Commerce Int'l (OVERSEAS) Ltd. v. State Bank*

*of Pak.*, 273 F.3d 241, 247–48 (2d. Cir. 2001) (advising conditional

dismissal if adequacy of alternative forum cannot be ultimately ascertained

but requiring full analysis of the forum's adequacy regardless).  The District

Court's order did none of these things.  Its failure to do so at the very least

requires modification by this Court to avoid unjust prejudice to Appellant.

For example, this Circuit has held the failure to address statutes of

limitations that could affect the claims between the parties is improper in the

*forum non conveniens* context.  *See, e.g., Usha (India)*, 421 F.3d at 135–36.

In *Usha (India)*, the plaintiff, an Indian company enforcing contract rights

governed by Indian law, sued the defendant in the Southern District of New

York.  *Id*. at 132–33.  The district court dismissed the action on *forum non*

*conveniens* grounds.  *Id*. at 133.  This Court did not take issue with the

district court's ultimate conclusion that the alternative forum could be

adequate but recognized the risk that it might not be adequate due to

significant court congestion in India.  *Id*. at 135–36.

---

[6] Notably, even if the District Court had modified its dismissal order, it was still required to analyze whether the alternative forum is adequate. *Calavo Growers of Cal. v. Generali Belg.*, 632 F.2d 963, 968 (2d Cir. 1980).  Thus, if this Court determines the District Court did not fully consider the adequacy of the alternative forum, then rather than modify the dismissal, this Court should simply reverse the District Court's decision below.

To remedy any possible prejudice to the plaintiff should the alternative forum prove inadequate, and under its inherent discretionary powers, this Circuit modified the district court's decision by remanding to the district court with instructions to make its dismissal conditional. *Id*. Specifically, this Court instructed the district court to place the case on its suspense docket and toll any statute of limitations under Indian law (the law that would apply to the case) so that if the Indian court were not an adequate forum, the case could be easily reinstated in the Southern District of New York without prejudice to the plaintiff. *Id*. at 136.

Similarly, here, even if this Court were to determine that the District Court did not err in severing Appellant's claims against GHM or in failing to fully consider whether Singapore is an adequate forum, the District Court's failure to consider applicability of the U.S. statutes of limitations to claims of U.S. copyright infringement against GHM in a Singapore action or in a late-filed action in the United States requires modification of the District Court's dismissal order to avoid any prejudice to Appellant.

Appellant therefore urges this Court, if it chooses not to reverse the District Court entirely, to modify the District Court's order to be contingent upon the Singapore court system's acceptance of the claims against GHM, GHM's acceptance of Singapore as an adequate alternative forum, and the

44

tolling of any applicable statute of limitations for U.S.-based infringement against GHM in litigation brought in Singapore or back in the United States at a later date, just as was ordered in *Usha (India)*, *Calavo Growers*, and *Bank of Credit and Commerce*.  *Usha (India)*, 421 F.3d at 136; *Calavo Growers*, 632 F.2d at 968; *Bank of Credit and Commerce*, 273 F.3d at 247–48.

> 3. GHM failed to meet its burden regarding the private factors, and the District Court improperly weighed them.

The private factors focus on ease of trying a case. *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947) (listing private factors, the last of which—i.e., any other factors making *trial* easier—indicating that the private factors focus of ease of trial).  GHM failed to meet its burden to establish the private factors favor dismissal, and the District Court improperly analyzed and weighed those factors.

As an initial matter, the fact that GHM filed a motion for summary judgment on the threshold copyright ownership issue indicates that GHM does not believe a trial is necessary in this case.  The availability of witnesses at trial is therefore not particularly probative here.  Further, the party seeking dismissal on *forum non conveniens* grounds must establish why the foreign witnesses' testimony is relevant and that they are not

available to testify.  *See, e.g., Manela v. Garantia Banking Ltd.*, 940 F. Supp. 584, 592–93 (S.D.N.Y. 1996).  GHM did not even attempt to meet this burden.

First, foreign employees and former employees are presumed available at trial, and the burden is merely economic, not procedural.  *See, e.g., Manu Int'l, S.A. v. Avon Prods., Inc.*, 641 F.2d 62, 66 (2d Cir. 1981) (burden of producing party employee witnesses located outside the U.S. is merely economic); *see also Manela*, 940 F. Supp. at 592 n.14 (recognizing that in absence of evidence to the contrary, some courts presume former employees are willing to testify for former employers).  At no point did GHM claim any of its employees or former employees would not be available for trial in New York.  Moreover, any financial burden in having to produce such witnesses at trial—especially for a multi-national company whose defense here is being paid by an insurer (A-1914, pp. 116:16–117:9)—is minimal.  GHM and the District Court also ignored the fact that GHM will likely be dragged right back into this action on indemnity claims once the stay is lifted, and GHM's witnesses will still need to appear in the United States.

Further, even if GHM's employee and ex-employee witnesses are unavailable at trial, their deposition testimony can be used at trial.  *See*

46

*DiRenzio*, 294 F.3d at 30 (videotaped deposition sufficient for jury to assess credibility of witnesses). Thus, GHM failed to establish that it would be burdened by having to try this case in New York based on its employee and former employee witnesses.

Second, GHM failed to meet its burden regarding whether other third party witnesses—namely the managers of the various Hotels—will be more readily available in Singapore. GHM claimed that the general managers for the various Hotels are presumably located in the countries where those hotels are but did not close the loop on why they are more available in Singapore than New York. (A-918). Indeed, even if these witnesses had probative testimony, none of the Hotels involved in this action, and thus, none of these witnesses, are in Singapore.[7] (A-56 to A-846).

Moreover, even if these witnesses could offer admissible, relevant testimony, because they are located in Europe, Asia, and the United States, GHM failed to establish they are any more available in Singapore than in New York. *See Manu Int'l*, 641 F.2d at 67 (failure to provide evidence that alternative forum would allow for compulsory process to compel attendance of other witnesses located outside of the alternative forum weighed against

---

[7] The probative value of these witnesses is also questionable. GHM provided no detail on what they might testify to. Appellant can only surmise it would be parol evidence on the terms of the parties' agreements on copyright ownership, which GHM itself argued was inadmissible when it came to similar testimony from Ms. Lee. (A-1981 to A-1982; A-2240). The hotel witnesses, therefore, do not support dismissal.

transfer).  Indeed, GHM failed to even respond to the fact that Singapore is not a signatory to the Hague Convention—a point raised by Appellant—so compulsory process may be less available there than in the United States. (A-1352).  Moreover, at least two of the Hotels at issue are in the U.S. (A-831, ¶ 10).  It would be far easier for these witnesses to appear in New York than Singapore.  The same would presumably be true for the European Hotel managers as well.  GHM therefore failed to establish that it would be more burdensome to produce these witnesses in New York than in Singapore.  *Id*.

GHM has cited only two other witnesses that might not be available for trial:  the photographer, Masano Kawana, and Appellant's accountant. (A-918; A-2000).  GHM failed to meet its burden on the private factors with these witnesses as well.  Indeed, Mr. Ohletz (GHM's former vice president) testified that he still regularly works with the photographer, Mr. Kawana. (A-1824 to 1825, pp. 74:5–75:9).  Given that the co-founder of GHM is also a co-founder of Mr. Ohletz's current employer, Regent Hotels Group, presumably contacting Mr. Kawana is likely not difficult.  (A-1797 to A-1798, 47:23–48:10).  GHM offered no evidence that it attempted to do so and was unsuccessful or that Mr. Kawana refused to appear.  Further, as with the Hotel managers, Mr. Kawana would presumably be called to provide inadmissible parol evidence (GHM was vague as to what it would

seek to have him testify on), so GHM once again failed to establish his relevance to the issues to be litigated.

With regard to Wave's accountant, who GHM stated may be necessary to testify regarding the chain of title (A-918), GHM already implicitly admitted his testimony is unnecessary by filing for summary judgment on that issue. If his testimony were so necessary to determine the chain of title, then GHM's claim it was entitled to summary judgment was specious. Further, GHM does not know (nor has it provided evidence that it inquired of Appellant) whether the accountant would be a willing witness at trial in the United States.[8]

This Circuit requires more in order to tip the private factors in favor of dismissal. Unsupported allegations of unavailability are not sufficient. *See Manu Int'l*, 641 F.2d at 67. Yet the District Court did not require this level of proof from GHM. Instead, with no evidence in the record, it took at face value GHM's unsupported assertions that these witnesses are more available in Singapore than New York. This constitutes reversible error. The District Court's dismissal order should be reversed with instructions as requested in Section X.

---

[8] The availability of documents for trial, which neither GHM nor the District Court even addressed, also does not favor transfer. (A-917 to A-918; A-2000; A-2383 to A-2384). Modern technology makes the transport of documents a much lower burden. *See, e.g.*, *Aerotel, Ltd. v. Sprint Corp.*, 100 F. Supp. 2d 189, 197 n.9 (S.D.N.Y. 2000) (citing *Coker v. Bank of Am.*, 984 F. Supp. 757, 766 (S.D.N.Y. 1997)).

      4.      GHM failed to meet its burden regarding the public factors, and the District Court improperly weighed them.

The public factors considered in a motion to dismiss for *forum non conveniens* are: court congestion; the interest of forums in having local disputes decided at home; the interest in having issues of law decided by courts of the nation whose law is involved. *Carey*, 370 F.3d at 237. The defendant seeking dismissal for *forum non conveniens* bears the burden at steps two and three of the *forum non conveniens* analysis. *Erausquin*, 806 F. Supp. 2d at 724. Like with the private factors, GHM failed to meet its burden on the public factors, and the District Court erred in finding they favor dismissal.

With the first factor, the District Court correctly found that the congestion in the court systems of the two fora—the Southern District of New York and the Singapore courts—is neutral. (A-2384). Indeed, GHM did not even address this factor. (A-918 to A-919).

With the remaining factors, however, the court incorrectly ruled that there is no local interest militating towards retention of this case in the United States. (A-2384 to A-2385). First, as discussed above in Section IX(B)(1)(a), the District Court did not consider that this case is one for infringement of copyrights in the United States, not Singapore. Though the Photographs were first published in Singapore and the contracts were

entered there, Appellant owns U.S. copyright registrations. The alleged infringing acts by all the defendants took place in the United States, by almost entirely American companies. (*See* A-830 to A-845, ¶¶ 10–68). GHM's server is located in the United States, and it has targeted consumers in the United States, including New York, putting its infringing activities within the U.S. as well. (A-1963). The U.S. federal courts, including the Southern District of New York, thus have a strong local interest in this case.

Ignoring these many connections to the United States, the District Court instead focused on its conclusion that Singapore law would likely govern the issue of copyright ownership in determining that there is no public interest in the U.S. over this case.[9] (A-2385 to A-2386). As discussed in Section IX(B)(2)(b), this analysis addresses only one element of Appellant's copyright claims and wholly ignores the other element—i.e., unauthorized copying—which is indisputably governed by U.S. law. *See Itar-Tass*, 153 F.3d at 88–92 (holding under "national treatment" under Berne Convention and holding that the law of the country of first publication applied to issue of copyright ownership and U.S. law applies to issues of infringement).

---

[9] Appellant does not concede, nor did the District Court decide, that the holding in *Itar-Tass* applies here (A-2386). Appellant asserts that if the District Court on remand decides that Singapore law applies to the threshold ownership issue, it can apply that country's law in resolving the issue. Indeed, both Appellant and GHM have presented the District Court with extensive expert testimony on the subject to do just that.

Thus, even if Singapore law were to apply to the initial element of copyright ownership, American law governs whether GHM or the other defendants actually infringed Appellant's copyrights in the Photographs. *Id.* American courts undoubtedly have a strong vested interest in deciding such claims of copyright infringement taking place in the United States.

The District Court ignored this significant local interest entirely, in favor of a threshold issue that is well within its power to consider and decide. *See id*. (applying Russian law as to issue of copyright ownership and applying U.S. law as to whether an infringement occurred); *see also Manu Int'l*, 641 F.2d at 67 ("'the need to apply foreign law is not in itself a reason to apply the doctrine of forum non conveniens'") (quoting *Olympic Corp. v. Societe Generale*, 462 F.2d 376, 379 (2d Cir. 1972)). This Circuit has cautioned against "an excessive reluctance to undertake the task of deciding foreign law, a chore federal courts must often perform." *Manu Int'l*, 641 F.2d at 67. Thus, assuming without conceding Singapore law applies to the threshold issue, rather than dismissing GHM, the District Court should have applied Singapore law on that issue.

Instead, the District Court improperly analyzed the public factors, and dismissed GHM. The public factors actually favor venue in the United

States.  Accordingly, this Court should reverse the District Court's dismissal on *forum non conveniens* grounds with the instructions described below.

X.     CONCLUSION

For the foregoing reasons, the District Court abused its discretion in granting GHM's motion for summary judgment on *forum non conveniens* grounds.  This Court should reverse the District Court's dismissal with instructions to decide the parties' cross-motions for summary judgment on their merits.  In the alternative, this Court should modify the District Court's dismissal order to be contingent upon the Singapore courts' acceptance of the case, GHM's agreement to Singapore as an alternative forum, and GHM's waiver of any statute of limitations defense should Appellant seek to litigate its U.S. copyright infringement claims against GHM in Singapore or

///

///

///

///

///

///

///

53

need to re-file an action against GHM in the U.S. to litigate those claims at a later date.

Dated: Berkeley, California
July 21, 2017

> COBALT LLP
> *Attorneys for Plaintiff-Appellant*
> 918 Parker Street, Suite A21
> Berkeley, California 94710
> (510) 841-9800
>
>
> By:    */S/ VIJAY K. TOKE, ESQ.*
>           Vijay K. Toke
>           Nate A. Garhart

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS AND TYPE STYLE REQUIREMENTS

1. This brief complies with the type-volume limitation of Fed.R.App.P.32(a)(7)(B) because:

   This brief contains 11,467 words, excluding the parts of the brief exempted by Fed.R.App.32(a)(7)(B)(iii).

2. This brief complies with the typeface requirements of Fed.R.App.P.32(a)(5) and the type style requirements of Fed.R.App.P32(a)(6) because:

   This brief has been prepared in Proportionally-Space typeface using Microsoft Word, in Times New Roman, Font Size 14.

# SPECIAL APPENDIX

i

# Table of Contents

**Page**

Opinion and Order of Honorable Cathy Seibel,
    Dated March 10, 2007 ............................................................SPA-1

SPA-1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
THE WAVE STUDIO, LLC,

                                        Plaintiff,

                    -against-                                          13-CV-9239 (CS)

                                                                **OPINION AND ORDER**
GENERAL HOTEL MANAGEMENT LTD. *et al.*,

                                        Defendants.
----------------------------------------------------------------x

Appearances:

Vijay K. Toke
Nate A. Garhart
Cobalt LLP
Berkeley, California
*Counsel for Plaintiff*

Howard J. Schwartz
Abigail J. Remore
Ilana Levin
Chiesa Shahinian & Giantomasi PC
West Orange, New Jersey
*Counsel for Defendant*

Seibel, J.

        Before the Court are the Motion for Summary Judgment of Defendant General Hotel

Management, Ltd. ("GHM"), (Doc. 178), and the Cross-Motion for Summary Judgment of

Plaintiff The Wave Studio, LLC, (Doc. 186).  For the following reasons, Defendant's Motion is

GRANTED and Plaintiff's Cross-Motion is DENIED without prejudice.

**I.    Background**

    A.    Facts

        The following facts, which are based on Defendant's Local Rule 56.1 Statement and

Plaintiff's Counter-Statement thereto, (Doc. 189 ("GHM 56.1 Stmt. & Resp.")), Plaintiff's Local

1

SPA-2

Rule 56.1 Statement and Defendant's Counter-Statement thereto, (Doc. 198 ("Wave Studio 56.1 Stmt. & Resp.")), and supporting materials, are undisputed except where noted.[1]

Lee Kar Yin, known as Junior Lee, is the principal of Plaintiff, The Wave Studio, LLC. (GHM 56.1 Stmt. & Resp. ¶ 1.)  Ms. Lee is a Malaysian citizen domiciled in Singapore.  (*Id.*)  Plaintiff is organized under the laws of New York and has its principal place of business in White Plains.  (Lee Decl. ¶ 6.)[2]  Plaintiff was created in September 2011 to serve as a holding company for the enforcement of the United States copyrights at issue in this suit.  (Wave Studio 56.1 Stmt. & Resp. ¶¶ 12, 58.)  Plaintiff has never employed anyone that resides in the United States, nor has it ever leased or owned any office space in the United States (although, at one point, Plaintiff did use the office of its former lawyers "as an address").  (GHM 56.1 Stmt. & Resp. ¶¶ 13, 14.)[3]  Ms. Lee is or was also the principal of several other entities organized under

---

[1] Defendant purports to dispute numerous assertions in Plaintiff's Local 56.1 Statement with the following language: "Ms. Lee's sham declaration is not sufficient factual evidence to make this claim."  (*See, e.g.*, Wave Studio 56.1 Stmt. & Resp. ¶ 39.)  "[T]he sham affidavit rule . . . prevents a party from submitting an affidavit that contradicts the party's prior deposition testimony in order to raise an issue of fact sufficient to preclude summary judgment."  *Rus, Inc. v. Bay Indus., Inc.*, 322 F. Supp. 2d 302, 307 (S.D.N.Y. 2003).  To the extent Ms. Lee's affidavit contradicts her prior testimony, I will disregard it, but such contradictions do not make the entire affidavit a nullity.  *See Kruger v. Virgin Atl. Airways, Ltd.*, 976 F. Supp. 2d 290, 309-10 (E.D.N.Y. 2013) (considering defendant's declarations to extent no contradiction shown with prior deposition testimony where "Plaintiffs rely mostly on conclusory, unsubstantiated claims that the declarations are 'sham affidavits'"), *aff'd*, 578 F. App'x 51 (2d Cir. 2014); *Torrico v. Int'l Bus. Machines Corp.*, 319 F. Supp. 2d 390, 394 n.2 (S.D.N.Y. 2004) (considering declaration "to the extent it augments, without contradicting, [] deposition testimony, addresses issues not explored thoroughly in that deposition, or finds support in other evidence in the record" and noting "[t]he so called 'sham affidavit' rule does not apply in two situations:  first, where the subsequent sworn statement either does not actually contradict the affiant's prior testimony or addresses an issue that was not, or was not thoroughly, explored in the deposition, and second, where that testimony is contradicted by evidence other than the deponent's subsequent affidavit, for when such other evidence is available, the concern that the proffered issue of fact is a mere 'sham' is alleviated.") (internal quotation marks omitted).  Thus, I will consider undisputed those properly supported factual assertions by Plaintiff that Defendant has not contested either through a showing that they are based on portions of Ms. Lee's affidavit that contradict her testimony or through the citation of other evidence that undermines them.

[2] "Lee Decl." refers to the Declaration of Lee Kar Yin in Support of Plaintiff's Cross-Motion for Summary Judgment, (Doc. 190).

[3] Plaintiff's former law firm, Leason Ellis LLP, is located in White Plains and represented Plaintiff from the inception of this lawsuit on December 31, 2013 until April 22, 2015.  (*See* Docs. 1, 114.)  When Plaintiff was registered with the state of New York on September 1, 2011, it gave Leason Ellis's White Plains office as its address for receipt of process.  Entity Information for The Wave Studio, LLC, NYS DEP'T EDUC. DIV. OF CORPS., https://www.dos.ny.gov/corps/bus_entity_search.html (complete "Search Criteria" form by entering The Wave

the laws of Singapore including:  Wave-S, the Wave Pte. Ltd., the Wave Studio Pte. Ltd., and the

Wave Design Pte. Ltd. (collectively the "Wave Entities").  (GHM 56.1 Stmt. & Resp. ¶ 3.)  The

Wave Entities are all based in Singapore and allegedly created the photographs at issue in this

suit.  (*Id.* ¶ 16.)[4]

Defendant GHM is organized under the laws of the British Virgin Islands and its

principal place of business is in Singapore.  (*Id.* ¶ 15.)  GHM manages a small group of luxury

hotels and resorts, primarily in Southeast Asia, (*id.* ¶ 4), and denies that it currently manages any

hotels in the United States, (Wave Studio 56.1 Stmt. & Resp. ¶ 4).  Plaintiff maintains that GHM

operates a sales office in New York City dedicated to building brand awareness and sales for

GHM-managed properties, but GHM asserts that it merely contracts with a city-based sales

representation office that cannot confirm reservations.  (*Id.* ¶ 13.)

Over a period of several years, the Wave Entities were commissioned to create marketing

materials, including photographs, for hotels managed by GHM.  (GHM 56.1 Stmt. & Resp.

¶¶ 21, 22.)  None of the authors of the photographs at issue are citizens of the United States.  (*Id.*

¶ 11.)  The Wave Entities hired Masano Kawana in connection with the photographs at issue, but

it is unclear whether he was in fact the photographer or just a factotum for Ms. Lee.  (*Id.* ¶¶ 28-

29; Wave Studio 56.1 Stmt. & Resp. ¶ 27.)  Mr. Kawana is a citizen of Japan who apparently is

based in Singapore.  (GHM 56.1 Stmt. & Resp. ¶ 11; Lee Decl. Ex. D; Remore Reply Decl. Ex.

7.)[5]  The relevant photographs were taken in Italy, India, Oman, Vietnam, Thailand, Malaysia,

---

Studio, LLC; then complete "Search Criteria" form again; then follow "The Wave Studio, LLC" hyperlink).  I thus
infer that Leason Ellis attorneys were involved in forming Plaintiff.

[4] The parties refer to the Wave Entities and/or Ms. Lee somewhat interchangeably.  Because Ms. Lee is the principal
of the Wave Entities which created the photographs at issue in this case, my references to the Wave Entities may be
taken to include or refer to Ms. Lee as appropriate.

[5] "Remore Reply Decl." refers to the Declaration of Abigail J. Remore in Further Support of Defendant's Motion for
Summary Judgment and in Opposition to Plaintiff's Cross-Motion for Summary Judgment, (Doc. 197).

SPA-4

Indonesia, Taiwan, Singapore, the Bahamas, and Florida, (GHM 56.1 Stmt. & Resp. ¶ 47), and were first published in Singapore, (*id.* ¶ 18).

There was no single master contract between GHM and the Wave Entities.  (*Id.* ¶ 23.) After a project was requested, the Wave Entities would submit a production estimate to the relevant hotel.  (*Id.* ¶ 24.)  At least some of the production estimates stated:  "We reserve the intellectual property copyright to all designs/soft copies/material/photographs/projects undertaken," and "We will proceed on the basis that this estimate is wholly acceptable unless advised to the contrary in writing before the work is undertaken."  (*Id.* ¶ 25; *see, e.g.*, Lee Decl. Ex. E, at GHM00003.)  Some of the production estimates were signed by the hotel and some were not.  (Wave Studio 56.1 Stmt. & Resp. ¶ 25.)  It is disputed whether the Wave Entities pointed out this language to any of the hotel general managers or to Ralf Ohletz Graf von Plettenburg ("Mr. Ohletz"), Vice President of GHM.  (GHM 56.1 Stmt. & Resp. ¶ 26; Wave Studio 56.1 Stmt. & Resp. ¶ 26; Remore Decl. Ex. E.)[6]  It is further disputed whether the Wave Entities advised Mr. Ohletz, Hans Jenni, the President and founder of GHM, or Kendall Oei, Director of GHM, that there was any limit on the ways the hotels could use the photographs at issue, (*see, e.g.*, GHM 56.1 Stmt. & Resp. ¶¶ 30, 35), or that the Wave Entities believed they owned any of the photographs or other works created for GHM, (*see, e.g., id.* ¶¶ 30, 31, 43).

After each photo shoot, the Wave Entities would provide edited images to the respective hotels on a CD-ROM.  (Wave Studio 56.1 Stmt. & Resp. ¶ 31.)  The final edited photographs did not contain any markings indicating that the images could not be used without the authorization of the Wave Entities.  (GHM 56.1 Stmt. & Resp. ¶ 40.)  The hotels paid the Wave Entities

---

[6] "Remore Decl." refers to the Declaration of Abigail J. Remore in Support of Defendant's Motion for Summary Judgment, (Doc. 182).

4

SPA-5

directly upon completion of a project.  (*Id.* ¶ 27.)  The Wave Entities did not separately invoice

GHM or the hotels for individual license fees for the photographs used in the marketing

materials they ordered.  (*Id.* ¶ 42.)

 The Wave Entities did not notify Defendant that they objected to particular uses of the

photographs on GHM's website until commencing this lawsuit, but Ms. Lee alleges she brought

to the attention of Mr. Jenni of GHM that the Nam Hai hotel was using her work without

authorization.  (*Id.* ¶¶ 43-45.)  As early as 2006, the Wave Entities were aware that GHM

provided some of its photographs to third parties, including *Interior Design Magazine*, *Conde*

*Nast Traveler*, and American Airlines.  (*Id.* ¶ 46.)  Plaintiff asserts that the Wave Entities

authorized these uses because Ms. Lee believed them to be limited.  (*Id.*)

 At some point after GHM and the Wave Entities stopped working together, GHM began

using Plaintiff's photographs on a new website and some of Plaintiff's photographs were

disseminated to third parties.  (Wave Studio 56.1 Stmt. & Resp. ¶¶ 41, 42.)

 At the center of this case are seventeen copyrights, registered between December 28,

2010 and February 18, 2011, covering 3000 photographs created by the Wave Entities between

2001 and 2005.  (GHM 56.1 Stmt. & Resp. ¶¶ 48-59.)[7]  The Wave Entities are listed as the

copyright claimants and authors on the Copyright Registrations.  (*Id.* ¶ 17.)  Plaintiff alleges that

all right, title, and interest in and to the Copyright Registrations was assigned to it on November

11, 2011.  (*Id.* ¶ 10; Wave Studio 56.1 Stmt. & Resp. ¶ 15.)  During the course of this litigation,

Plaintiff learned that some of the copyright assignments were ineffective because they were

made by entities that had been dissolved years before, and that others needed to be clarified.

---

[7] The seventeen copyrights are:  VAu 1-055-458, VAu 1-055-459, VAu 1-057-927, VAu 1-060-180, VAu 1-060-182, VA 1-423-324, VA 1-432-325, VA 1-432-326, VA 1-432-327, VA 1-432-328, VA 1-432-329, VA 1-432-330, VA 1-432-331, VA 1-432-332, VA 1-432-336, VA 1-758-524, VA 1-765-854, (the "Copyright Registrations").  (*Id.* ¶ 48.)

(Wave Studio 56.1 Stmt. & Resp. ¶¶ 61-64.)  In an attempt to rectify these issues, on September 4, 2015, a document titled "Declaration of Lee Kar Yin and Nunc Pro Tun[c] Copyright Assignments to the Wave Studio," (the "2015 Declaration") was recorded in the United States Copyright Office.  (*Id.* ¶ 65; GHM 56.1 Stmt. & Resp. ¶ 85.)  At that same time, Plaintiff filed documents with the Copyright Office to correct registrations that listed an incorrect claimant. (Wave Studio 56.1 Stmt. & Resp. ¶¶ 68, 69.)

B.    Procedural Background

Plaintiff filed the original complaint in this action on December 31, 2013, (Doc. 1), and an Amended Complaint ("AC") on April 23, 2014, (Doc. 7), alleging copyright infringement on the part of GHM, fifty-eight other Defendants (generally, travel-related businesses that maintain websites), and unknown entities "Does 1 through 100," arising out of Defendants' unauthorized use of Plaintiff's photographs, (AC ¶¶ 4-69).  Plaintiff also filed eight additional suits in the Northern District of California naming twenty-one additional Defendants.  (GHM 56.1 Stmt. & Resp. ¶ 6.)  All but one of the Northern District of California suits were transferred to this Court and consolidated with the instant case.  (*Id.* ¶ 7.)  Soon after the AC was filed, GHM suggested that the Court stay the case as to all Defendants except GHM, and that Plaintiff and GHM first litigate the issue of GHM's right to use and disseminate the photographs.  (Doc. 50.)  Its theory was that a finding that GHM had such a right would be case-dispositive as to it and the vast majority of the other Defendants, who allegedly received the photographs from GHM.  (*Id.*)[8] Plaintiff consented, (Doc. 60), and the Court stayed the case as to all Defendants except GHM, (Doc. 67).  Plaintiff and GHM have each moved for summary judgment.

---

[8] Some Defendants have sought indemnity from GHM, each other, and/or hotels currently or formerly managed by GHM for photographs they received and used allegedly without Plaintiff's authorization.  (Wave Studio 56.1 Stmt. & Resp. ¶ 43.)

SPA-7

II.   **Legal Standard**

Summary judgment is appropriate when "the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.

R. Civ. P. 56(a).  "[T]he dispute about a material fact is 'genuine' . . . if the evidence is such that

a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby,*

*Inc.*, 477 U.S. 242, 248 (1986).  A fact is "material" if it "might affect the outcome of the suit

under the governing law . . . .  Factual disputes that are irrelevant or unnecessary will not be

counted." *Id.*  On a motion for summary judgment, "[t]he evidence of the non-movant is to be

believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255.

The movant bears the initial burden of demonstrating "the absence of a genuine issue of

material fact," and, if satisfied, the burden then shifts to the non-movant to "present evidence

sufficient to satisfy every element of the claim." *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d

Cir. 2008) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).  "The mere existence

of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there

must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson*, 477

U.S. at 252.  Moreover, the non-movant "must do more than simply show that there is some

metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,

475 U.S. 574, 586 (1986), and he "may not rely on conclusory allegations or unsubstantiated

speculation," *Fujitsu Ltd. v. Fed. Express Corp.*, 247 F.3d 423, 428 (2d Cir. 2001) (internal

quotation marks omitted).

"A party asserting that a fact cannot be or is genuinely disputed must support the

assertion by . . . citing to particular parts of materials in the record, including depositions,

documents, electronically stored information, affidavits or declarations, stipulations (including

those made for purposes of the motion only), admissions, interrogatory answers, or other

materials . . . ."  Fed. R. Civ. P. 56(c)(1).  Where an affidavit is used to support or oppose the motion, it "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant . . . is competent to testify on the matters stated."  Fed. R. Civ. P. 56(c)(4); *see Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 310 (2d Cir. 2008).  In the event that "a party fails . . . to properly address another party's assertion of fact as required by Rule 56(c), the court may," among other things, "consider the fact undisputed for purposes of the motion [or] grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it."  Fed. R. Civ. P. 56(e)(2), (3).

III.  **Discussion**

Both sides seek summary judgment on various grounds, as to GHM's right, or lack thereof, to use and disseminate the photographs at issue.  (*See, e.g.*, D's Mem. at 8-18, 23-39; P's Mem. at 11-13, 22-40.)[9]  I need not address most of the issues raised by the parties (*e.g.*, standing, personal jurisdiction, and implied license) because I am persuaded by GHM's argument that I should dismiss Plaintiff's claims against it on the ground of *forum non conveniens*.  *See Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 425, 435-36 (2007) (court need not take up jurisdictional issues if it determines that *forum non conveniens* dismissal is appropriate); *Doe v. Hyland Therapeutics Div.*, 807 F. Supp. 1117, 1133 (S.D.N.Y. 1992) ("Due to this Court's disposition of these cases on *forum non conveniens* grounds, the question whether plaintiffs have standing to sue need not be reached."); *see also Carijano v. Occidental Petroleum Corp.*, 643 F.3d 1216, 1227 (9th Cir. 2011) ("[T]he district court was not

---

[9] "D's Mem." refers to Defendant's Memorandum of Law in Support of its Motion for Summary Judgment, (Doc. 179); "P's Mem." refers to Plaintiff's Memorandum of Law in Support of its Cross-Motion for Summary Judgment and in Opposition to Defendant's Motion for Summary Judgment, (Doc. 187).

**SPA-9**

required to decide the standing question before ruling on the *forum non conveniens* motion.") (citing *Sinochem Int'l Co.*, 549 U.S. at 422).

A.     *Forum Non Conveniens*

"The principle of forum non conveniens is simply that a court may resist imposition upon its jurisdiction even when jurisdiction is authorized by the letter of a general venue statute." *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 507 (1947). "[F]orum non conveniens [i]s, essentially, a supervening venue provision, permitting displacement of the ordinary rules of venue when, in light of certain conditions, the trial court thinks that jurisdiction ought to be declined." *Sinochem Int'l Co.*, 549 U.S. at 429-30 (internal quotation marks omitted). "The decision to dismiss a case on *forum non conveniens* grounds lies wholly within the broad discretion of the district court." *Gundlach v. Int'l Bus. Machs. Corp.*, No. 11-CV-846, 2012 WL 1520919, at *12 (S.D.N.Y. May 1, 2012), *aff'd on other grounds*, 594 F. App'x 8 (2d Cir. 2014).

"Courts must determine and weigh three factors for *forum non conveniens* challenges:  (i) the degree of deference due to the plaintiff[']s choice of forum; (ii) whether an adequate alternative forum exists; and (iii) the balance of public and private interests implicated in the choice of forum." *Guerrini v. Atmel Corp.*, No. 15-CV-2664, 2016 WL 3548238, at *2 (2d Cir. June 27, 2016) (summary order) (citing *Iragorri v. United Techs. Corp.*, 274 F.3d 65, 70-74 (2d Cir. 2001)). "[D]efendant bears the burden at steps two and three." *Erausquin v. Notz, Stucki Mgmt. (Bermuda) Ltd.*, 806 F. Supp. 2d 712, 724 (S.D.N.Y. 2011).

"A motion to dismiss on *forum non conveniens* grounds may be made at any time." *In re Hellas Telecomms. (Luxembourg) II SCA*, 555 B.R. 323, 345 (Bankr. S.D.N.Y. 2016); *see Jacobs v. Felix Bloch Erben Verlag fur Buhne Film und Funk KG*, 160 F. Supp. 2d 722, 742 (S.D.N.Y. 2001) ("[T]he case[]law seems to be clear that *forum non conveniens* motions are not governed by the same time constraints imposed by Rule 12(h) of the Federal Rules of Civil

Procedure on personal jurisdiction and venue motions."); 14D Charles Alan Wright, Arthur R.

Miller & Edward H. Cooper, Federal Practice and Procedure [hereinafter Federal Practice and

Procedure] § 3828 (4th ed. 2016) ("[T]here generally is no time limit on when a motion to

dismiss for forum non conveniens must be made.").  "However, in evaluating whether a

plaintiff's choice of forum was convenient, the court may consider the defendant's delay in

bringing a motion to dismiss on the basis of *forum non conveniens*."  *In re Hellas Telecomms.*,

555 B.R. at 345; *see Genpharm Inc. v. Pliva-Lachema a.s.*, 361 F. Supp. 2d 49, 59 (E.D.N.Y.

2005) (no limit on when *forum non conveniens* motion may be made, but delay is factor in

evaluating convenience of forum).

     *a.  Delay*

     Plaintiff argues that Defendant's motion for summary judgment based on *forum non*

*conveniens* should be denied because it comes more than two years after the case was initiated.

(P's Mem. at 14.)  Defendant's delay in moving to dismiss on *forum non conveniens* grounds is

understandable given that it may not have had concrete evidence of Plaintiff's lack of meaningful

connections to New York until after engaging in discovery, including deposing Plaintiff's

principal, Ms. Lee, on May 21, 2015 and September 9, 2015.  (*See* Remore Decl. Exs. C, D.)

Further, as Defendant highlights, Plaintiff's own delay in substituting counsel "was so prolonged

that the Court found it necessary to issue an Order to Show Cause why Plaintiff's prior counsel

should not be relieved and warned Plaintiff that its case would be dismissed for failure to

prosecute if it failed to substitute counsel."  (D's Reply at 29; *see* Docs. 96, 97, 102, 104.)[10]  In

addition, in February 2015, GHM alerted Plaintiff in writing of the potential *forum non*

---

[10] "D's Reply" refers to Defendant's Reply Memorandum of Law in Support of its Motion for Summary Judgment and in Opposition to Plaintiff's Cross-Motion for Summary Judgment, (Doc. 195).

*conveniens* ground for dismissal, (Remore Reply Decl. Ex. 10), and in April 2015 GHM emailed

Plaintiff to confirm receipt of the February letter, (*id.* Ex. 11). *See Rodriguez v. Orion*

*Schiffahrts-Gesellschaft Reith & Co.*, 348 F. Supp. 777, 779 (S.D.N.Y. 1972) (finding no

prejudice to plaintiff from defendant's delay in moving to dismiss on *forum non conveniens*

grounds where plaintiff's "counsel was advised soon after the commencement of the action that

defendant intended to move that the Court decline jurisdiction"). Therefore, while I take into

account that the case has been litigated here for some time in considering the relative

inconvenience of this forum, any delay by Defendant in bringing a motion on the basis of *forum*

*non conveniens* is not a ground for denying GHM's motion.

   b.   *Deference Due to Plaintiff's Choice of Forum*

   Turning to the first factor in the *forum non conveniens* analysis, "the degree of deference

given to a plaintiff's forum choice varies with the circumstances." *Iragorri*, 274 F.3d at 71

(citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 256 (1981)).

> [T]he greater the plaintiff's or the lawsuit's bona fide connection to the United
> States and to the forum of choice and the more it appears that considerations of
> convenience favor the conduct of the lawsuit in the United States, the more difficult
> it will be to gain dismissal[,] whereas the more it appears that the plaintiff's choice
> of a U.S. forum was motivated by forum-shopping reasons[,] the less deference the
> plaintiff's choice commands.

*In re Optimal U.S. Litig.*, 837 F. Supp. 2d 244, 251 (S.D.N.Y. 2011) (alterations and internal

quotation marks omitted). "[T]he choice of a United States forum by a foreign plaintiff is

entitled to less deference." *Iragorri*, 274 F.3d at 71. Similarly, "shell companies are not entitled

to the full measure of 'home forum' deference." *RIGroup LLC v. Trefonisco Mgmt. Ltd.*, 949 F.

Supp. 2d 546, 552 (S.D.N.Y. 2013) (citation omitted), *aff'd*, 559 F. App'x 58 (2d Cir. 2014); *id*

("[C]ourts have held that deference to an American citizen or resident plaintiff's choice of forum

is significantly diminished where the lawsuit arises from business that the plaintiff conducted

abroad."); *Broad. Rights Int'l Corp. v. Societe du Tour de France, S.A.R.L.*, 675 F. Supp. 1439, 1446-47 (S.D.N.Y. 1987) ("[W]here the real party in interest is a foreigner and the plaintiff is a United States citizen solely by virtue of its place of incorporation, the plaintiff's choice of forum will carry considerably less weight.").

Plaintiff's principal, Ms. Lee, is a Malaysian citizen domiciled in Singapore, (GHM 56.1 Stmt. & Resp. ¶ 1), the Wave Entities are or were organized under the laws of Singapore, (*id.* ¶ 3), GHM has its principal place of business in Singapore, (*id.* ¶ 15), and the arrangements among them were no doubt centered there.  Plaintiff has never had any employees that reside in the United States or leased or owned any office space here.  (*Id.* ¶¶ 13, 14.)  Mr. Kawana, who worked for the Wave Entities in connection with the photographs created for GHM, is a citizen of Japan apparently based in Singapore.  (*Id.* ¶¶ 11, 28, 29; Lee Decl. Ex. D; Remore Reply Decl. Ex. 7.)  None of the photographs that Plaintiff asserts have been infringed in this action were taken in New York, (GHM 56.1 Stmt. & Resp. ¶ 47), and they were all first published in Singapore, (*id.* ¶ 18).  Plaintiff's only connection to New York is that it is organized under New York law, and it is obvious that that is the case only because the American attorney Ms. Lee originally hired to form Plaintiff and bring these lawsuits happened to have his office in White Plains.  (*See* GHM 56.1 Stmt. & Resp. ¶ 11; Lee Decl. ¶ 6; *see supra* note 3.)  I have no doubt that had Ms. Lee retained an attorney in Bismarck or Nashville, Plaintiff would have been organized under the laws of and brought suit in North Dakota or Tennessee.

Plaintiff does not deny its lack of connections to New York, and there is at least an element of forum shopping in its decision to file suit in this Court.  Plaintiff is admittedly a "holding company formed under New York law prior to the onset of this case and located within this District for the purpose of enforcing the copyrights" to the photographs at issue in this case.

(P's Mem. at 15; *see* Wave Studio 56.1 Stmt. & Resp. ¶¶ 12, 58.)  Although Plaintiff was formed

under New York law, its sole member is Ms. Lee, the real party in interest, who is a foreigner.

*See Broad. Rights Int'l Corp.*, 675 F. Supp. at 1446-47.  She testified at her deposition that

Plaintiff was formed in New York because "the justice system in [the] United States of America

is one of the best to protect the creative works of Wave." (GHM 56.1 Stmt. & Resp. ¶ 1; Remore

Reply Decl. Ex. 1, at 18:23-19:6.)  Given the absence of meaningful connections between

Plaintiff and the Southern District of New York, and the evidence suggesting forum shopping,

Plaintiff's choice of forum is entitled to little deference.  *See RIGroup LLC*, 949 F. Supp. 2d at

552 ("[T]o the extent that RIGroup USA[, a holding company,] existed as a legal entity at all

during the events in question, its United States status provides no bona fide reason for the

plaintiffs to have sued in this Court, and its choice of this forum deserves little deference.")

(internal quotation marks omitted).[11]

   c.  *Adequacy of an Alternative Forum*

   Turning to the second factor in the analysis, "[GHM] bears the burden of establishing that

a presently available and adequate alternative forum exists." *Abdullahi v. Pfizer, Inc.*, 562 F.3d

163, 189 (2d Cir. 2009).  "In the context of a motion to dismiss for *forum non conveniens,* a

foreign jurisdiction is not adequate unless it will permit [the plaintiff] to litigate the subject

matter of its dispute." *Royal & Sun All. Ins. Co. of Can. v. Century Int'l Arms, Inc.*, 466 F.3d 88,

95 (2d Cir. 2006) (internal quotation marks omitted).  "[T]he forum non conveniens doctrine

demands that the alternate forum be adequate, not perfect, and not a mirror image of every

substantive and procedural right, remedy and protection potentially available to Plaintiffs' in the

---

[11] The Court does not question the legitimacy of forming a holding company to enforce copyright rights.  The point, however, is that Plaintiff here is a New York company only because that was convenient for former counsel, and that apart from that all-but-random connection, neither Plaintiff (which essentially exists only on paper) nor the instant controversy has any connection to this forum.

American forum of their choice." *In re Alcon S'holder Litig.*, 719 F. Supp. 2d 263, 272

(S.D.N.Y. 2010); *see* 14D Federal Practice and Procedure § 3828.3 ("[I]t is not unusual for an

alternative forum to be considered adequate even though the federal judge knows that the

proposed tribunal will process the case quite differently, apply significantly different substantive

rules, and provide limited remedies.").

> American courts should be wary of branding other nations' judicial forums as
> deficient in the substance or procedures that their laws contain.  Such denunciations
> . . . risk imposing on our judicial system the burden of serving as courtroom to the
> world for the adjudication of essentially foreign disputes with only nominal
> connections with the United States.

*Corporacion Tim, S.A. v. Schumacher*, 418 F. Supp. 2d 529, 532-33 (S.D.N.Y. 2006), *aff'd*, 223

F. App'x 37 (2d Cir. 2007) (citation omitted).

The parties have submitted declarations from their proffered experts in Singapore law.

(*See* Lai Decl.; Llewelyn Decl.)[12]  Plaintiff's expert, Gordon Ionwy David Llewelyn, explains:

"Copyright is a statutory right in Singapore, which is a common law jurisdiction . . . whose laws

were influenced significantly by U.K." and, more recently, Australian law.  (Llewelyn Decl.

¶ 15.)  Both parties' experts explain that the Singapore Copyright Act governs copyright actions

in Singapore and analyze the facts of this case within that framework.  (*See, e.g.*, *id.* ¶¶ 16-19;

Lai Decl. ¶¶ 11-24.)  Based on a review of the experts' declarations, and the exhibits attached

thereto, (*see, e.g.*, Llewelyn Decl. Ex. 4; Lai Decl. Ex. 2), I am persuaded that Singapore

copyright law is well developed and that Plaintiff can adequately pursue its claims in Singapore.

"Plaintiff agrees Singapore has a sufficiently developed legal system . . . ."  (P's Mem. at 16; *see*

---

[12] "Lai Decl." refers to the Declaration of Dr. Stanley Lai in Support of Defendant's Motion for Summary Judgment,
(Doc. 180); "Llewelyn Decl." refers to the Declaration of Gordon Ionwy David Llewelyn in Support of Plaintiff's
Cross-Motion for Summary Judgment, (Doc. 191).

SPA-15

*also* P's Reply at 14 ("Plaintiff does not dispute that Singapore has an adequate legal system.")[13]
Further, as Defendant notes, "Plaintiff has already demonstrated its own confidence in Singapore
as an adequate alternative forum because it has previously sued GHM in Singapore as recently as
2010." (D's Mem. at 21; *see* Remore Decl. Ex. C, at 206:4-25.)

Courts decline to find an alternative forum adequate where there are procedural barriers
to bringing a case in that alternative forum. *See, e.g.*, *Paisola v. GAP Adventures, Inc.*, No. 10-
CV-8920, 2012 WL 1019585, at *2-4 (S.D.N.Y. Mar. 26, 2012) (adopting report and
recommendation finding that no adequate alternative forum existed because claim would be
time-barred under Canadian law). Neither party has suggested that any such procedural barriers
exist to Plaintiff bringing its claims against GHM, and having them fairly adjudicated, in
Singapore. In addition, GHM is headquartered in Singapore and is amenable to service there.
(Remore Reply Decl. Ex. 10, at 6.)[14] Accordingly, I find that Singapore is an adequate
alternative forum. *See Creative Tech., Ltd. v. Aztech Sys. Pte., Ltd.*, 61 F.3d 696, 704 (9th Cir.
1995) (affirming district court determination "that the High Court of Singapore is an adequate
alternative forum in which to adjudicate [plaintiff's] United States copyright infringement
claim"); *see also Schijndel v. Boeing Co.*, 263 F. App'x 555, 557 (9th Cir. 2008) (affirming
district court's determination that Singapore was an adequate alternative forum); *Anwar v.
Fairfield Greenwich Ltd.*, 742 F. Supp. 2d 367, 377 (S.D.N.Y. 2010) (Singapore is an adequate
alternative forum).

---

[13] "P's Reply" refers to Plaintiff's Reply Memorandum of Law in Support of its Cross-Motion for Summary
Judgment, (Doc. 200).

[14] Plaintiff focuses much of its opposition on Defendants other than GHM who may not be subject to service of
process in Singapore. (P's Mem. at 16-17.) As discussed further below, I need only analyze whether Singapore is
an adequate alternative venue for Plaintiff's claims against GHM.

### d. Balance of Private and Public Interests in the Choice Forum

Having determined that Singapore is an adequate alternative forum, this Court "must proceed to balance public and private interests to determine whether the convenience of the parties and the ends of justice would best be served by dismissing the action." *Murray v. British Broad. Corp.*, 81 F.3d 287, 293 (2d Cir. 1996).

> The private interests to be considered include:  the interests of the litigants in having the case tried in a particular forum; the relative ease of access to sources of proof; the availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; . . . and, all other practical problems that make trial of a case easy, expeditious and inexpensive.  Public interest factors include:  court congestion; the interest of forums in having local disputes decided at home; and, the interest in having issues of law decided by courts of the nation whose law is involved.

*Carey v. Bayerische Hypo-Und Vereinsbank AG*, 370 F.3d 234, 237 (2d Cir. 2004) (citation omitted).

The Wave Entities and GHM are or were located in Singapore and all of the Wave Entities are or were incorporated there.  (GHM 56.1 Stmt. & Resp. ¶¶ 15, 16.)  Ms. Lee has stated that "[w]hile Wave Studio maintains an office in White Plains, New York, all relevant documents and knowledge are in [her] possession in Singapore."  (Remore Decl. Ex. T, at ¶ 3.) New York is not even a convenient forum for Plaintiff.  Ms. Lee, resides "full-time in Singapore" and travel to New York is expensive and inconvenient for her.  (*Id.* Ex. T ¶ 4) ("Travel to San Francisco [would be] far more convenient and considerably less expensive . . . than travel to New York.")  The same is true for GHM, which has its principal place of business in Singapore.  (GHM 56.1 Stmt. & Resp. ¶ 15.)

With respect to obtaining the attendance of witnesses, Defendant has shown that there are no witnesses located in or even near this forum, and that virtually all witnesses – such as the photographer who worked with Ms. Lee, the accountant who prepared assignments and other

16

SPA-17

corporate documents for her, and the hotel managers who worked with her (assuming they are still located where the hotels are) – would find Singapore more convenient. (*Id.* ¶¶ 4, 11; 15; 28; Lee Decl. Ex. D; Remore Decl. Ex. C, at 188:1-3; Remore Reply Decl. Ex. 7.) Plaintiff, in contrast, has not provided any names of individuals who would be inconvenienced if this case were to proceed in Singapore. Along these same lines, Plaintiff has not identified anyone located in New York, or even in the United States, whose testimony would be relevant and helpful to proving its claims against GHM.[15] Therefore, the private interests weigh in favor of dismissal.

Turning to the public interest in adjudicating this case in this Court, the Southern District of New York "is one of the busiest in the country, making it a paradigmatic congested center of litigation," *Tel. Sys. Int'l Inc. v. Network Telecom PLC*, 303 F. Supp. 2d 377, 384 (S.D.N.Y. 2003) (internal quotation marks omitted), but neither side has provided information regarding the speed with which this case could be resolved in Singapore. Therefore, "[c]ourt congestion is not a significant factor." *Giro, Inc. v. Berhad*, No. 10-CV-5550, 2011 WL 2183171, at *9 (S.D.N.Y. June 3, 2011) (court congestion not a significant factor where "there is no indication that courts in the United Kingdom or Malaysia would provide a less expeditious forum than this Court").

As discussed above, there is no local interest in this case given that all of the relevant photographs were taken abroad (with the exception of Florida) and first published in Singapore, and presumably all of the relevant agreements were formed there. (GHM 56.1 Stmt. & Resp. ¶¶ 18, 47.) That Plaintiff's former attorney was based in New York and Plaintiff was formed as a holding company here is not sufficient to give rise to a local interest in this case. *See Alamir v. Callen*, 750 F. Supp. 2d 465, 468 (S.D.N.Y. 2010) (dismissing on *forum non conveniens* grounds

---

[15] Indeed, the only individual involved in this controversy with any connection to New York is Plaintiff's former attorney, and he is now out of the case.

17

where "there is no local interest in having this controversy litigated here. This is a claim by a French citizen against a domiciliary of Puerto Rico with respect to a prenuptial agreement signed in France in anticipation of a French wedding. The burdens upon our courts and jurors are sufficient without reaching out to adjudicate disputes related to French marriages, even where the parties for some reason have agreed to New York governing law clauses."); *Tel. Sys. Int'l*, 303 F. Supp. 2d at 384 (dismissing on *forum non conveniens* grounds where "[t]here is no local interest in deciding a dispute over a relationship formed in the United Kingdom, invoices billed in the United Kingdom, and services that were performed by a British company in Afghanistan," given that "nearly all of the material fact witnesses are located in the United Kingdom"); *see also Creative Tech.*, 61 F.3d at 704 ("This is not a case involving the piracy of American made [work] or substantively involving American companies. As such, the United States' interest in resolving this controversy and the relation of the jury community to this controversy are extremely attenuated and do not sway the balance against dismissal."). Claims with such "a tenuous connection to this forum . . . do not justify the significant administrative costs that stand to be levied upon this Court, or the burden of jury duty expected to be thrust upon a community substantially distanced from the controversy." *Tel. Sys. Int'l*, 303 F. Supp. 2d at 384 (internal quotation marks omitted).

The final public interest factor to consider is "the interest in having issues of law decided by courts of the nation whose law is involved." *Carey*, 370 F.3d at 237.

> Under Second Circuit law, international copyrights are subject to a bifurcated choice of law analysis. When determining the initial owner of a copyright, a court must look to the law of the country in which the work originated. However, the scope of the rights that attend copyright ownership is determined by the country in which the copyright is to be enforced. This is also known as the "national treatment" principle.

**SPA-19**

*Van Cleef & Arpels Logistics, S.A. v. Landau Jewelry*, 583 F. Supp. 2d 461, 463 (S.D.N.Y. 2008). Ownership here is likely to be a matter of Singapore Law. *See Itar-Tass Russian News Agency v. Russian Kurier, Inc.*, 153 F.3d 82, 90-91 (2d Cir. 1998) (ownership determined by law of state with most significant relationship, as determined by such factors as nationality of authors and place of first publication). "While the Court need not definitively resolve the choice of law issue at this point, the likelihood that foreign law will apply weighs against retention of the action." *Ioannides v. Marika Mar. Corp.*, 928 F. Supp. 374, 379 (S.D.N.Y. 1996); *see Tel. Sys. Int'l*, 303 F. Supp. 2d at 384 ("[W]ithout engaging in a full conflict of laws analysis, this Court finds that there is at least some likelihood that this Court, if it retained the case, would be obliged to apply English law to a part or to the entire case, a factor that cuts to some degree in defendants' favor.") (alterations and internal quotation marks omitted).

Accordingly, the balance of private and public interests weighs in favor of dismissing Plaintiff's claims against GHM on *forum non conveniens* grounds.

The first factor – Plaintiff's choice of forum – provides scant support for retaining the case, and Defendant has demonstrated that the second and third factors militate strongly in favor of dismissal of Plaintiff's claims against it. The remaining issue is whether the claims against the stayed Defendants should prevent a *forum non conveniens* dismissal of the claims against GHM.

B.   Severance and Stay of Related Proceedings

Federal Rule of Civil Procedure 21 provides that, "on [a] motion or on its own, [a] court may . . . sever any claim against a party." Fed. R. Civ. P. 21. "The decision whether to grant a severance motion is committed to the sound discretion of the trial court." *State of N.Y. v. Hendrickson Bros., Inc.*, 840 F.2d 1065, 1082 (2d Cir. 1988). "Severed claims become entirely

19

independent actions to be tried, and judgment entered thereon, independent." *Oram v. SoulCycle LLC*, 979 F. Supp. 2d 498, 502 (S.D.N.Y. 2013) (alteration and internal quotation marks omitted).

> Courts in this Circuit consider the following factors in determining if severance is appropriate:  (1) whether the claims arise out of the same transaction or occurrence; (2) whether the claims present some common questions of law or fact; (3) whether settlement of the claims or judicial economy would be facilitated; (4) whether prejudice would be avoided if severance were granted; and (5) whether different witnesses and documentary proof are required for the separate claims.

*Id.* at 502-03.  "Severance requires the presence of only one of these conditions." *Cestone v. Gen. Civer Holdings, Inc.*, No. 00-CV-3686, 2002 WL 424654, at *2 (S.D.N.Y. Mar. 18, 2002). "Courts have cautioned, however, that severance is a procedural device to be employed only in exceptional circumstances." *Deskovic v. City of Peekskill*, 673 F. Supp. 2d 154, 160 (S.D.N.Y. 2009) (alteration and internal quotation marks omitted).

"[T]his Court has broad discretion to sever [Plaintiff's] claims against [GHM] and may do so for a wide variety of reasons," even if "there exist some common question[s] of law and fact" with Plaintiff's claims against other Defendants. *Erausquin*, 806 F. Supp. 2d at 722.  The Second Circuit "has never required claims to be litigated together on that basis alone." *Id.*  In particular, courts may exercise their discretion to sever claims to facilitate dismissal on *forum non conveniens* grounds or a transfer of venue.  *See Wyndham Assocs. v. Bintliff*, 398 F.2d 614, 618 (2d Cir. 1968) ("[W]here the administration of justice would be materially advanced by severance and transfer, a district court may properly sever the claims against one or more defendants for the purpose of permitting the transfer of the action against the other defendants, at least in cases where, as here, the defendants as to whom venue would not be proper in the transferee district are alleged to be only indirectly connected to the manipulations which form the main subject matter of the action."); *Erausquin*, 806 F. Supp. 2d at 724 (severing claims against

**SPA-21**

a particular defendant "largely to facilitate a forum non conveniens dismissal"); *Blum v. Gen. Elec. Co.*, 547 F. Supp. 2d 717, 736-37 (W.D. Tex. 2008) ("[W]ith respect to all other Plaintiffs of German nationality, the Court is convinced that it is in the interest of convenience for the parties for the Court to sever their claims pursuant to Rule 21, and dismiss them pursuant to the doctrine of forum non conveniens.").

In this case, severance is in the interest of judicial economy. All parties agreed to a stay of Plaintiff's claims against all Defendants but GHM, recognizing that whether or not GHM infringed any of Plaintiff's alleged copyrights will inform the resolution of Plaintiff's claims against the other Defendants who allegedly received Plaintiff's photographs from GHM. That issue can, for the reasons discussed earlier, be resolved more appropriately and less expensively in Singapore. Further, to the extent it is resolved in Plaintiff's favor, the remaining claims will involve different witnesses and documents.

Accordingly, Plaintiff's claims against GHM are hereby severed to facilitate dismissal of Plaintiff's claims against GHM on *forum non conveniens* grounds. Plaintiff's claims against Defendants other than GHM, as well as any cross-claims against GHM, will continue to be stayed pending the resolution of the case between Plaintiff and GHM in Singapore. *See* Restatement (Second) of Conflict of Laws § 86 cmt. b (1971) ("While the pendency of a foreign action is not a bar to the maintenance of an action in the state of the forum, it may induce the court to grant a stay of the latter action . . . pending the outcome of the first."); *cf. In re Hellas Telecomms.*, 555 B.R. at 342 ("[I]n the context of a *forum non conveniens* dismissal of the named Defendants, the Court could *sua sponte* sever the claims against members of the putative class – and then stay the claims pending the U.K. court's decision.").

21

SPA-22

**IV.**   <u>**Conclusion**</u>

For the reasons stated above, GHM's Motion for Summary Judgment on Plaintiff's claims against it, (Doc. 178), is GRANTED, and Plaintiff's claims against GHM are dismissed on *forum non conveniens* grounds.  Plaintiff's Cross-Motion for Summary Judgment, (Doc. 186), is DENIED without prejudice.  Plaintiff's claims against the remaining Defendants, and any cross-claims among the Defendants, continue to be stayed in this Court.  Plaintiff and GHM are directed to provide this Court with a status update every three months.  The Clerk of Court is directed to terminate the pending Motions, (Docs. 178, 185, 186, 194).[16]

**SO ORDERED.**

Dated:  March 10, 2017
       White Plains, New York

_____
CATHY SEIBEL, U.S.D.J.

---

[16] The parties requested oral argument, (Docs. 185, 194), but I do not find it necessary.

22